## J. T. CROSS V. SHELL OIL COMPANY, INCORPORATED.

No. A-496. Decided June 6, 1945.
Rehearing overruled July 11, 1945.
(188 S. W., 2d Series, 375.)

*Oliver W. Fannin,* of Fort Worth, for appellant.

The contract was ambiguous and capable of more than one construction. Shell Pet. Corp. v. Tippett, 103 S. W. (2d) 448; State Natl. Bank of Corpus Christi, v. Morgan, 135 Texas 509, 143 S. W. (2d) 757; Milliken v. County of Callahan, 69 Texas 205, 6 S. W. 681.

*R. H. Wilden,* of Houston, for appellee.

MR. JUDGE FOLLEY, of the Commission of Appeals, delivered the opinion for the Court.

This cause is before us upon certified questions from the Court of Civil Appeals for the Second Supreme Judicial District. It involves the demand of the appellee, Shell Oil Company, Inc., against appellant, J. T. Cross, for the repayment of delay rentals which Shell was compelled to pay the State of Texas under the Relinquishment Act upon an oil and gas lease executed by Cross. Art. 5367, et seq., V. A. C. S.

On and prior to March 18, 1926, Cross was the owner of the soil of 640 acres of public school land in Crane County known as section 2, in block B-22. The land had been sold by the State with a mineral classification and therefore the State retained title to all the oil, gas or other minerals in the land, and held a first lien upon all the oil or gas produced upon any lease thereafter executed on the land to secure the payment of all unpaid royalty or other sums that might become due. Art. 5382. As the duly authorized agent of the State under the Relinquishment Act, Cross and wife, as the purported lessors, leased the section to Henry Zwiefel on the date mentioned for the primary term of ten years, providing for 1/8th royalty and for delay rentals of $1.00 per acre, payable annually, and further that the lease might be assigned in whole or in part. The lease contained a

general warranty clause and provided that the lessee might pay off any lien against the land and be subrogated to the rights of the holder of the lien. The lease is couched in the same language and contains the same terms and conditions as the lease involved in the case of Navarro Oil Co. v. Cross, 139 Texas 272, 162 S. W. (2d) 677. It contains the usual clause providing that if the lands are classified as mineral lands the State was due its pro rata part of the oil and gas royalty and that the lessee should deduct and pay the State the amount due it. It further provided that if the acreage leased was subject to mineral classification then the lessor executed the instrument not only in their individual capacities, but as agents for the State of Texas.

On the same date Zwiefel acquired the lease, he assigned to Shell all his rights thereunder to the southeast 1/4th of the section, being 160 acres. The rentals on this quarter section are the only ones here involved.

Prior to the decision on February 24, 1932, in Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S. W. (2d) 265, Shell paid the annual rentals of $160.00 to Cross, and paid the State only the ten cents per acre required by Article 6358, amounting to $16.00 per year. On February 20, 1932, Cross executed an agreement with Shell by which he undertook to reduce the annual rentals to $40.00 per year. In 1932 Shell paid Cross $40.00 and paid the State $16.00. From that time forward during the life of the lease Shell paid Cross $40.00 and the State $80.00 annually. After the decision in the Empire case Shell was compelled to pay the State one-half the delay rentals theretofore paid to Cross. This suit is for reimbursement of the amount so paid in the sum of $384.00.

Shell alleged that Cross was liable to it under the general warranty and subrogation clauses of the lease. Cross answered that he had a parol agreement with the original lessee that he was to receive all of the delay rentals except the ten cents per acre required by Article 5368, and that Zwiefel or his assigns should pay the State of Texas whatever additional amounts that might be required by law. He alleged also that by the language of the lease the parties meant that if any additional amounts had to be paid the State, the lessee or his assigns should pay the same, and that if the lease does not clearly so provide then the provisions thereof were ambiguous and should be explained by parol proof in order to show the true intentions of the parties.

The cause was tried before the court without a jury. The trial court found that prior to February 4, 1932, Shell believed

Cross was entitled to receive the delay rentals in the sum of $160.00 annually; that at all times during the life of the lease Cross thought he was entitled to the delay rentals; and that prior to the decision in the Empire case there was doubt and uncertainty generally as to the meaning and effect of the Relinquishment Act and that one-half of the delay rentals were paid to Cross by mutual mistake. The trial court concluded that the lease provided clearly and without ambiguity for a total annual delay rental of $160.00 on the 160 acres involved and that the State was entitled to receive one-half of such sums and Cross the remaining one-half; that the lease was unambiguous and not suceptible of the construction contended for by Cross and therefore the parol testimony presented by Cross for the purpose of explaining certain provisions of the lease was not admissible, and if admissible was not sufficient to constitute a defense to Shell's cause of action.

Judgment was rendered for Shell in the sum of $384.00.

Cross appealed to the Court of Civil Appeals which affirmed the judgment of the trial court, but upon motion for rehearing decided to submit the following questions to this court:

"I. Was extrinsic evidence, under Cross's pleadings, admissible for the purpose of arriving at the true intention of the original parties to the lease contract in respect to the amount of delay rentals to be paid to and appropriated by Cross?

"II. If extrinsic evidence was admissible to arrive at such true intention of the original lessee and lessor, was same binding on appellee, the assignee of such lease, in the absence of any pleading on the part of appellee contending that it was an innocent purchaser without notice of such claimed agreement?

"III. After the oil and gas lease became effective, in view of the rights of the State of Texas, could Cross and the assignee of the lease, the appellee, legally make an agreement purporting to reduce the amount of annual delay rentals below that fixed in the original lease?"

██ It is our opinion that the trial court was correct in the conclusion that the lease is unambiguous. Such was impliedly the holding in Navarro Oil Co. v. Cross, supra. That case and this are each governed by Greene v. Robison, 117 Texas 516, 8 S. W. (2d) 655, Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S. W. (2d) 265, and Lemar v. Garner, 121 Texas 502, 50 S. W. (2d) 769. Those cases have clearly defined the rights of both the State and the owner of the soil under the Relinquishment

Act. It is thus settled that the Act authorizes the owner of the soil as agent of the State to sell or lease the oil or gas from the land, whereupon the State and the owner shall each be entitled to one-half of all the royalties, bonuses, rentals or other sums received under the sale or lease, provided that in no event shall the State receives less than ten cents per acre per year and 1/16th of the oil or gas produced as royalty.

■ The lease here involved must be interpreted in the light of the authorities mentioned. The provision in the instrument which designates Cross and wife as the "lessor" to whom the annual rentals should be paid must be limited by the further provision defining the respective rights of the parties in the event that lands are of mineral classification. In such case the State is the real lessor and the land owner is its agent. As so executed the State is entitled to one-half of the rentals for which it holds a lien, the lessee or his assigns is obligated to pay the same, and as a result thereof is subrogated to the rights of the State. Under such circumstances the owner of the soil is no more entitled to receive or retain all of the rentals than he is all of the 1/8th royalty designated in the lease as payable to the "lessor." Consequently, any parol agreement to the effect that the land owner should receive all of the annual rentals and the lessee should pay all further sums due the State, would necessarily contradict the contractual terms of the written instrument, and proof thereof is therefore inadmissible. Kahn v. Kahn, 94 Texas 114, 58 S. W. 825.

We answer the first question in the negative which results in the second becoming immaterial.

The third question must be answered only conditionally. As agent of the State under the Relinquishment Act the owner of the soil who leases school and asylum lands is entitled to receive one-half of the bonuses, rentals and royalties derived from the land as compensation for his services as agent of the State in making the lease and "in lieu of all damages to the soil." Such interest is a severable estate in fee simple which he owns during the life of the lease. As long as the lease exists his interest and that of the State are separable and distinct. The interest of the owner may be assigned by him as any other interest in land. Lemar v. Garner, supra. Therefore, with reference to his one-half interest in the rentals and royalties, Cross would be authorized to make the agreement in question in so far as it might not affect the rights of the State as to the interest held by it. This authority is given Cross because the Act invests him

with such estate independent of the interest of the State. But to determine his authority as an agent over the State's interest we must look solely to the affirmative language of the Act itself. It only authorizes him to sell or lease the mineral rights upon such terms and conditions as he may deem best, subject only to the other provisions of the Act which do not enlarge upon these powers. It in nowise confers upon him any control or dominion over the interest of the State after it has once accrued under such sale or lease. Therefore, the agent has no authority to reduce the amount of the annual delay rentals due the State under the terms of the original lease.

We answer the third question to the effect that Cross and Shell may agree to reduce the annual delay rentals which may be paid to Cross, but they may not reduce the amount of the same due the State of Texas under the terms of the original lease.

Opinion adopted by the Supreme Court June 6, 1945.

Rehearing overruled July 11, 1945.