**EXXON CORPORATION, Appellant,**

v.

**Wally SCOTT, Trustee, and The State of Texas, Appellees.**

**No. 9472.**

Court of Appeals of Texas,
Texarkana.

Sept. 30, 1986.

As Amended on Denial of Rehearing
Oct. 28, 1986.

Shannon Ratliff, McGinnis, Lockridge & Kilgore, Austin, for appellant.

Frank Douglass, Steve Selby, Scott, Douglass & Luton, Jose Manuel Rangel, Atty. General's Office, Austin, for appellees.

BLEIL, Justice.

Exxon Corporation appeals the denial of its motion for partial summary judgment and the granting of the motions for summary judgment of the State of Texas and Wally Scott, Trustee for the General Land Office of Texas, in a case concerning the settlement in another suit which involved an oil and gas lease on land covered by the Relinquishment Act.[1]

---

1. The law commonly referred to as the Relinquishment Act is contained in Chapter 52, Subchapter F of the Natural Resources Code. Tex. Nat.Res.Code Ann. §§ 52.171, 52.173, 52.174, 52.175, 52.176, 52.177, 52.178, 52.179, 52.180 (Vernon 1978), §§ 52.172, 52.182 (Vernon 1978) (amended 1985), and § 52.181 (Vernon Supp. 1986).

The issue is whether Exxon, as the owner of a percentage of interest in the surface estate of mineral classified land [2] is entitled to a proportionate share of one-half of the proceeds that the State received as part of the settlement of a suit involving an oil and gas lease covering the land of which Exxon owned a percentage of the surface estate. We conclude that Exxon is entitled to share in the proceeds received by the State.

On March 3, 1925, the Duval County Ranch Company executed an oil and gas lease—the Mobil lease—to Vacuum Oil Company covering mineral classified land and non-mineral classified land located in Duval and Webb Counties. Mobil Producing Texas and New Mexico, Inc. and Mobil Oil Company, referred to collectively as Mobil, succeeded to Vacuum Oil Company's interest as lessee. Exxon is the successor in interest to an undivided 30.937 percent interest in the surface estate of the mineral classified land covered by the Mobil lease.

In July 1982, Clinton Manges and the Ranch Company, which was acting both in its corporate capacity and also as agent for the State of Texas under the Relinquishment Act, brought suit against Mobil and others who had an interest in the lease, including the royalty owners and Exxon. Although named as defendants, Exxon and the royalty owners were not served with citation. In January 1983, the State of Texas intervened as a plaintiff in the lawsuit.

Manges, the Ranch Company, and the State alleged that the Mobil lease had terminated due to Mobil's failure to comply with the ninety-day drilling obligation contained in the lease, and Mobil's failure to reasonably develop the lease. They asked for judicial declarations that the Mobil lease had lapsed by its own terms and that the lease was actually two separate leases, one of land covered by the Relinquishment Act and one of privately owned tracts.

They also sought actual and exemplary damages.

In late 1983, the State, Manges, and the Ranch Company reached an agreement with Mobil concerning the settlement of the case. They set a hearing for December 20, 1983, at which they planned to obtain a judgment pursuant to the settlement. When publicity concerning the settlement began to appear, Exxon determined that it was necessary to investigate the terms of the settlement and its effect on Exxon's interests as a surface owner and a mineral owner under the Mobil lease.

On December 20, 1983, Exxon entered the lawsuit by filing an answer. Exxon's pleadings also included a crossclaim against Mobil, the lessee, questioning the validity of the lease and a counterclaim against the State and other participants in the impending settlement, asking the court to award Exxon that portion of the settlement, if any, to which Exxon was entitled. The settlement hearing was postponed from December 20, 1983 to January 5, 1984.

After the December 20 hearing, Exxon learned that Mobil was not paying cash in the settlement. Rather, the publicized cash figures were supposed to come from a purchaser of the lease. Mobil had agreed to assign the lease to the State, Manges, and the Ranch Company. In exchange, the State, Manges, and the Ranch Company agreed to dismiss the lawsuit, release all claims against Mobil, and allow Mobil to retain a 1/64 overriding royalty on the fee lands covered by the Mobil lease. According to Manges, the Ranch Company, and the State, they were going to sell the working interest to investors, while preserving the interests of all royalty owners under the Mobil lease.

There were attempts to settle Exxon's claims in the suit before the hearing set for January 5, but no settlement was reached. Just before that hearing, Exxon withdrew

---

**2.** During the latter part of the last century and the early part of this one, Texas sold certain public land, reserving all minerals to the State. The land thus sold without any mineral interest is referred to as "mineral classified land." Mineral classified land is subject to the provisions of the Relinquishment Act.

its crossclaim questioning the validity of the lease. Mobil, the State, Manges, and the Ranch Company decided to proceed with their original settlement agreement, although Exxon's claim for its share of the proceeds of any settlement was still pending. Exxon's counterclaim was severed on its own motion and the other parties took a nonsuit in their causes against Exxon. The settlement between Mobil, Manges, the Ranch Company, and the State of Texas was completed.

At the hearing on January 5, Mobil presented evidence of the validity of the lease to the court pursuant to the settlement agreement between the State, Manges, and Mobil. This evidence was not contested by the State or Manges. The trial court then entered judgment declaring the lease to be valid and denying all claims of Manges and the State.

On the same day, Mobil assigned the lease to McAllen State Bank as trustee for Manges, the Ranch Company, and the State, reserving for itself a 1/64 of 8/8ths overriding royalty in the non-mineral classified land. McAllen State Bank then assigned the fee land portion of the lease to Morris Atlas, as trustee for Manges and the Ranch Company, and assigned the mineral classified land portion of the lease to Wally Scott, as trustee for the State of Texas. Both assignments provide that it was the parties' intent to sever the Mobil lease to create two separate leases, and that it was their intent not to merge the interests under the lease.

Exxon's severed counterclaim for its statutory portion of the proceeds of the settlement agreement was still before the trial court. Exxon, the State of Texas, and Scott each filed separate motions for summary judgment. Manges, the Ranch Company, Man-Gas Transmission Company, and Atlas also filed a joint motion for summary judgment.

On the motion of all parties, the trial court severed Exxon's case against Manges, the Ranch Company, Man-Gas Trans-

mission Company, and Atlas, which concerned land that was not mineral classified, from Exxon's case against the State of Texas and Scott, which concerned mineral classified land. Only the portion of the case which concerns mineral classified land is now before this Court.

Exxon's motion for partial summary judgment asked the trial court to declare that under the Relinquishment Act, Exxon, as surface owner, is entitled to its proportionate share of one-half of the working interest which the State received as consideration for settlement of the Mobil case. The motions for summary judgment filed by the State of Texas and Scott asked for summary judgment against Exxon on all issues.

The trial court granted the State's and Scott's motions for summary judgment, and denied Exxon's motion for partial summary judgment.

Exxon complains that the trial court erred in granting the motions of the State and Scott for summary judgment and in denying Exxon's motion for summary judgment. In reviewing summary judgment proceedings, we apply the following rules: (1) the movant has the burden to show that there is no issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference is indulged in favor of nonmovants and doubts resolved in their favor. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975); Tex.R.Civ.P. 166–A.

Exxon maintains that as a matter of law, it is entitled to 30.937%, the percentage of its ownership of the surface interest in the land, of one-half of the consideration received by Scott, trustee for the State, in return for the State's settlement with Mobil, because Exxon is a Relinquishment Act surface owner.[3] Relevant sections of the Act provide:

3. In *Greene v. Robison*, 117 Tex. 516, 8 S.W.2d 655 (1928), the Supreme Court explains the

background and purpose of the Relinquishment Act:

### § 52.171.  School and Asylum Lands

The state hereby constitutes the owner of the soil its agent for the purposes herein named, and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same that may be upon and within the surveyed and unsurveyed public free school land and asylum lands and portions of such surveys sold with a mineral classification or mineral reservation, subject to the terms of this law.  The remaining undivided portion of said oil and gas and its value is hereby reserved for the use of and benefit of the public school fund and the several asylum funds.

### § 52.172.  Sale and Lease by Agent

The owner of said land is hereby authorized to sell or lease to any person, firm, or corporation the oil and gas that may be thereon or therein upon such terms and conditions as such owner may deem best, subject only to the provisions hereof, and he may have a second lien thereon to secure the payment of any sum due him.  All leases and sales so made shall be assignable.  No oil or gas rights shall be sold or leased hereunder for less than 10 cents per acre per year plus royalty, and the lessee or purchaser shall in every case pay the state 10 cents per acre per year of sales and rentals; and in case of production shall pay the state the undivided one-sixteenth of the value of the oil and gas reserved herein, and like amounts to the owner of the soil.

[Just prior to the passage of the Relinquishment Act, t]here was a dual or double ownership of the land, the surface estate and the mineral estate, each antagonistic to and conflicting with the other.  There was no provision of law for the protection of the owner of the soil in his peaceable enjoyment and possession of his property.  The development of an oil field on it would be disastrous to him and utterly destructive of his property.  Therefore the attitude of owners of the school and asylum lands throughout the state was practically one of armed resistance.  The conditions were inimical to any effort at development, and the state was not realizing on its

### § 52.182.  Damages to Soil

The payment of the 10 cents per acre and the obligation to pay the owner of the soil one-sixteenth of the production and the payment of same when produced and the acceptance of same by the owner, shall be in lieu of all damages to the soil.

■ In interpreting the Relinquishment Act, the Supreme Court has declared that the State and the owner of the surface estate are each entitled to one-half of all bonuses, royalties, rentals, or other consideration.  *Cross v. Shell Oil Co.*, 144 Tex. 78, 188 S.W.2d 375 (1945); *Greene v. Robison*, 117 Tex. 516, 8 S.W.2d 655 (1928); *see also* 3 F. Lange, *Land Titles and Title Examination* § 234 (Texas Practice 1961). The proceeds received by the State as consideration for the settlement of a suit involving an oil and gas lease covering land in which Exxon owned a percentage of interest in the surface estate are encompassed by the Supreme Court's interpretation of compensation to be shared by the State and the surface owner—the proceeds are consideration paid by the lessee. Therefore, Exxon is entitled to a proportionate share of one-half of the proceeds that the State received as consideration for the settlement of the suit.

Indeed, at one point in the lawsuit, the State conceded that Exxon, as a surface owner, was entitled to a share of the settlement proceeds.  The Land Commissioner signed a stipulation in this case.  The first paragraph of the stipulation provides:

mineral estate in these lands.  The purpose of the act was to meet this practical situation. . . .  The Legislature has brought about this desired result in a lawful manner by requiring the purchaser of the oil and gas to compensate the owner of the soil for the use he makes of the surface, independent of the price he pays for the minerals.  He compensates said owner for the inevitable damages of oil exploration and operation.  The landowner acquires no estate in the oil and gas. He simply has a right to receive the compensation from the lessee out of the lessee's production as the statute provides.

The State of Texas stipulates and agrees that Exxon Corporation is entitled, as a Relinquishment Act owner and agent, to recover a portion of the consideration received by The State in settlement of the State's claims made in Cause Number (sic) No. 33,674 in Webb County, Texas, styled *Clinton Manges, et al v. Mobil Producing Texas & New Mexico Inc., et al,* but is unable to determine the amount to which Exxon is entitled and wishes a court to declare the amount due Exxon.

The State argues that assuming Exxon is correct that the settlement involved Mobil's assignment of a portion of the working interest in the lease covering the mineral classified land to the State, Exxon is precluded from sharing in the working interest or proceeds from the working interest by Tex. Nat.Res. Code Ann. § 52.177 (Vernon 1978). The last sentence of Section 52.177 provides:

> A relinquishment to the state of a lease producing oil or gas in paying quantities shall not operate to relinquish or convey to the owner of the soil any interest whatever in the oil and gas that may be in the land included in said lease.

■ The Supreme Court construed this provision of Section 52.177 (then Tex.Rev. Civ.Stat.Ann. art. 5373 (repealed 1977)) in *Greene v. Robison,* supra. In that case, the Relinquishment Act was attacked as unconstitutional, partly on the ground that it made a gift of part of the State's interest in the oil and gas in land covered by the Relinquishment Act to the surface owner of the land. The Court found the Relinquishment Act to be constitutional, holding that it did not give the surface owner an interest in the oil and gas. In so holding, it pointed out:

> The concluding sentence of article 5373 [now Tex.Nat.Res.Code Ann. § 52.177] stipulates that "a relinquishment to the state of a lease producing oil or gas in paying quantities shall not operate to relinquish or convey to the owner of the soil any interest whatever in the oil and gas that may be in the land included in said lease"; thus directly indicating that

the owner of the soil should have and receive no benefits other than the amounts as provided in article 5368.

As earlier observed, the Court went on to declare that the State and the surface owner are to share equally in all bonuses, royalties, rentals, or other consideration under the Act. The purpose of the last sentence of Section 52.177 is to stress that title to the oil and gas in land covered by the Relinquishment Act remains in the State, despite anything that may happen to the lease. Under the terms of the settlement reached by the State and Mobil, the title to the oil and gas in the mineral classified land remains in the State, as is required under the Act; it is only interest in the lease that provides consideration for the settlement. Section 52.177 does not bar Exxon, as a Relinquishment Act surface owner, from sharing in the proceeds of the settlement.

The Relinquishment Act, as interpreted by the Supreme Court, provides that the State and the owner of the soil are to share equally in all bonuses, royalties, rentals, or other consideration paid by the lessee. Unquestionably, Exxon would be entitled to a proportionate share of the settlement of the lawsuit had Mobil paid cash to the State. Were we to hold that Exxon is not entitled to a share in the proceeds received in the settlement of the earlier lawsuit against Mobil, we would be allowing the State to defeat Exxon's right to receive its share simply by designating that the consideration be paid in a particular form. This would not only be unfair, but would also frustrate the purposes of the Act.

We conclude that Exxon, as owner of a percentage of interest in the surface estate of mineral classified land, is entitled to a proportionate share of one-half of the proceeds received by the State in settlement of the earlier lawsuit. Thus the trial court erred in granting the State's motion for summary judgment; it further erred in denying Exxon's motion for partial summary judgment. A summary judgment should have been granted to Exxon because the summary judgment evidence establishes both the absence of any genuine issue of

fact and that Exxon is entitled to judgment as a matter of law. Tex.R.Civ.P. 166–A(c).

We reverse the summary judgment and here render judgment that Exxon is entitled to its share in the proceeds received by the State.