Wally SCOTT, Trustee, and the State of
Texas, Petitioners,

v.

EXXON CORPORATION, Respondent.

No. C–6008.

Supreme Court of Texas.

July 6, 1988.

Rehearing Denied March 1, 1989.

Frank Douglass, Steve Selby, Scott, Douglass & Luton, Jim Mattox, Atty. Gen., José Manuel Rangel, Office of the Atty. Gen., Energy Div., Austin, for petitioners.

Diana K. Borden, McGinnis, Lochridge & Kilgore, Austin, James R. Stevens, Exxon Corp., Houston, Shannon H. Ratliff, McGinnis, Lochridge & Kilgore, Austin, Manuel Gutierrez, Webb County Dist. Clerk, Webb County, Loredo, for respondent.

OPINION

GONZALEZ, Justice.

This is an appeal from the granting of a summary judgment. The issue is whether Exxon, as the owner of an interest in the surface estate of mineral classified land, is entitled to a proportionate share of the proceeds received by the State as part of a settlement of a suit involving an oil and gas lease covering land on which Exxon owned an interest. The trial court granted a summary judgment for the State. The court of appeals reversed the judgment of the trial court and held for Exxon. 720 S.W.2d 819. We reverse the judgment of the court of appeals and affirm that of the trial court.

This dispute has its origins in the settlement of another lawsuit. That lawsuit involved a controversy over an oil and gas lease covering lands in Duval and Webb counties. In 1925, the Duval County Ranch Company (DCRC), the fee simple owner of non-mineral classified land and the surface owner of mineral classified land subject to the Texas Relinquishment Act, executed an oil and gas lease covering both the mineral classified land and non-mineral classified land to the lessee, Vacuum Oil Company ("the Mobil lease").[1] Mobil Producing Texas and New Mexico, Inc. and Mobil Oil Company (Mobil) succeeded to the interests of the original lessee. Exxon is the successor in interest to an undivided 30.397 percent interest in the surface estate of the mineral classified land covered by the Mobil lease. Clinton Manges and DCRC together own the other 69.603 percent of the surface estate of the mineral classified land covered by the Mobil lease. Exxon and Manges are and have

---

1. Beginning many years ago, Texas sold public land reserving all minerals to the State. Consequently, land in which the minerals have been reserved by the State is referred to as "mineral classified land". This land is subject to the Relinquishment Act that was enacted in 1919 and which is presently contained in Section 52.171 et. seq. of the Natural Resources Code. This Act establishes a procedure for the peaceable and orderly development of the oil and gas resources reserved to the State.

been receiving their respective royalties on production from the mineral classified land covered by the Mobil lease.

In July 1982, Manges, on behalf of himself, DCRC (Manges) and as agent for the State under the Relinquishment Act, brought suit against Mobil, Exxon, the royalty owners under the lease, and some of the farmoutees under the lease. The suit sought to terminate the Mobil lease on two bases. First, that Mobil had failed to comply with the ninety-day drilling obligation contained in the lease. Second, that Mobil had failed to reasonably develop the lease. Manges asked for a judicial declaration that the Mobil lease had lapsed by its own terms and that the lease was actually two separate leases, one of land covered by the Relinquishment Act and one of privately owned tracts. Manges also sought actual and exemplary damages. Mobil was the only defendant served with citation. In January 1983, the State of Texas intervened as a plaintiff in the lawsuit.

In late 1983, Manges and the State reached an agreement with Mobil. A hearing was set for December 20, 1983, at which time Manges, the State and Mobil planned to obtain a judgment pursuant to their settlement.

On December 20, 1983, Exxon entered the lawsuit by filing an answer. Exxon's pleadings included a cross-claim against Mobil questioning the validity of the Mobil lease, and a counterclaim against the State and other participants in the impending settlement, asking the court to award Exxon that part of the settlement, if any, to which Exxon was entitled. The parties declined to settle with Exxon and the hearing which they had set to enter judgment on their settlement was postponed from December 20, 1983 to January 5, 1984.

After filing its answer, Exxon learned that Mobil was not paying cash in the settlement. Rather, Mobil had agreed to assign the lease to the State and Manges. In exchange, the State and Manges agreed to dismiss the lawsuit, release all claims against Mobil, and allow Mobil to retain a 1/64 overriding royalty on the fee lands covered by the Mobil lease. According to

Manges and the State, they planned to sell the working interest to investors for cash while preserving the interest of all royalty owners under the Mobil lease.

There were attempts to settle Exxon's claims in the suit before the hearing set for January 5, but no settlement was reached. Just before that hearing, Exxon withdrew its cross-claim questioning the validity of the lease. Exxon's counter-claim was severed and the other parties took a nonsuit in their causes against Exxon. Mobil, the State and Manges then proceeded with their original settlement agreement. Mobil presented evidence as to the validity of the lease. This evidence was uncontested. The trial court entered a judgment validating the lease and denying all claims of Manges and the State.

Pursuant to the settlement agreement, Mobil assigned the lease to McAllen State Bank as Trustee for Manges, DCRC, and the State, reserving for itself a 1/64 of 8/8 overriding royalty in the non-mineral classified land. On the same day, McAllen State Bank assigned the non-mineral classified land portion of the lease to Morris Atlas, as trustee for Manges, and the mineral classified land portion of the lease, to Wally Scott, as Trustee for the General Land Office and Permanent School Fund.

The case proceeded to trial on Exxon's severed counterclaim for its claimed portion of the proceeds of the settlement agreement, and for a declaration that the Mobil lease had terminated. The trial court severed Exxon's portion of the case concerning the non-mineral classified lands from the portion of the case which concerns the mineral classified lands.

In the trial court, Exxon, the State, and Scott each filed separate motions for summary judgment. Exxon's motion for summary judgment asked the trial court to declare that under the Relinquishment Act, Exxon, as a surface owner, was entitled to its proportionate share of one-half of the working interest which the State received as consideration for settlement of the Mobil case. The motions for summary judgment filed by the State and Scott asked for summary judgment against Exxon on all is-

sues. The trial court granted the State's and Scott's motions for summary judgment and denied Exxon's motion. The court of appeals reversed the judgment of the trial court and rendered judgment that Exxon, as owner of a percentage of interest in the surface estate of mineral classified land, is entitled to 30.397 percent of one-half of the proceeds received by the State in settlement of the earlier lawsuit. Only the portion of the case which concerns mineral classified lands is on appeal.

The relevant sections of the Relinquishment Act to be applied here provide:

§ 52.171. School and Asylum ,Lands

The state hereby constitutes the owner of the soil its agent for the purposes herein named, and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas which has been undeveloped and the value of the same that may be upon and within the surveyed and unsurveyed public free school land and asylum lands and portions of such surveys sold with a mineral classification or mineral reservation, subject to the terms of this law. The remaining undivided portion of said oil and gas and its value is hereby reserved for the use of and benefit of the public school fund and the several asylum funds.

§ 52.172. Sale and Lease by Agent

The owner of said land is hereby authorized to sell or lease to any person, firm, or corporation the oil and gas that may be thereon or therein upon such terms and conditions as such owner may deem best, subject only to the provisions hereof, and he may have a second lien thereon to secure the payment of any sum due him. All leases and sales so made shall be assignable. No oil or gas rights shall be sold or leased hereunder for less than 10 cents per acre per year plus royalty, and the lessee or purchaser shall in every case pay the state 10 cents per acre per year of sales and rentals; and in case of production shall pay the

state the undivided one-sixteenth of the value of the oil and gas reserved herein, and like amounts to the owner of the soil.

§ 52.182. Damages to Soil

The payment of the 10 cents per acre and the obligation to pay the owner of the soil one-sixteenth of the production and the payment of same when produced and the acceptance of same by the owner, shall be in *lieu of all damages to the soil.* (emphasis added).

As interpreted by this court, these provisions of the Relinquishment Act do not create a grant to the surface owners of $15/16$ of the undeveloped oil and gas, but rather relinquish to the surface owners the sole authority to lease the State's minerals on behalf of the State and the school children of Texas. *Greene v. Robison,* 117 Tex. 516, 8 S.W.2d 655 (1928). Title to the oil and gas remains with the State for the benefit of the public school and asylum funds. No title or interest in the oil and gas in and under the mineral reserved lands vests in the owner of the surface estate. As consideration for their service as agents and as payment for the inevitable surface damage suffered by the surface owners as a result of the oil and gas recovery process, the Act entitles the surface owners to share with the State "one-half of all royalties, bonuses, rentals or other sums received under the sale or lease...." *Cross v. Shell Oil Co.,* 144 Tex. 78, 188 S.W.2d 375, 377 (1945); *Lemar v. Garner,* 121 Tex. 502, 50 S.W.2d 769 (1932). Therefore, while the landowner acquires no estate in the oil and gas, the landowner is entitled to share with the State in the benefits of the lease.[2]

There has long been a policy of strict construction of the Relinquishment Act in favor of the State. In *Empire Gas & Fuel Co. v. State,* 121 Tex. 138, 47 S.W.2d 265, 272 (1932), we said:

The rule is also well settled that legislative grants of property, rights, or privileges must be construed strictly in favor

---

**2.** For a detailed discussion of the historical purposes and legislative history of the Relinquishment Act, see *Empire Gas & Fuel Co. v. State,* 121 Tex. 138, 47 S.W.2d 265 (1932) and *Greene*

*v. Robison,* 117 Tex. 516, 8 S.W.2d 655; and A.W. Walker, Jr., *The Texas Relinquishment Act,* in *First Annual Institute on Oil and Gas Law,* 245 (1949).

of the state on grounds of public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in the terms of the statute must operate in favor of the state.

This principle was recently reaffirmed by the court in *Schwarz v. State*, 703 S.W.2d 187, 189 (Tex.1986). See also *State v. Standard*, 414 S.W.2d 148, 153 (Tex.1967).

Although the proceeds of the settlement were not paid in conjunction with the operation of the lease, the court of appeals nonetheless held that as a matter of law, Exxon was entitled to a proportionate share of the proceeds of the settlement. In support of its ruling, the court of appeals cited *Cross v. Shell Oil Co.*, 144 Tex. 78, 188 S.W.2d 375; *Greene v. Robison*, 117 Tex. 516, 8 S.W.2d 655 (1928); and the Relinquishment Act. This reliance is misplaced because neither the Relinquishment Act nor case law supports that court's decision. In both *Cross* and *Robison*, the consideration paid by the lessee to the surface owner was consideration paid for the *leasing of the land.*

In *Cross*, the surface owner leased Relinquishment Act land for annual delay rentals of $160 to be paid to the surface owner and $16 (10 cents per acre) to be paid the State. The State filed suit to recover one-half of the total delay rental contracted for by the surface owner. We held that the State was "entitled to one-half of all the royalties, bonuses, rentals or other sums *received under the sale or lease....*" (emphasis added). 188 S.W.2d at 377.

In *Robison*, there was a dispute over amounts contracted for by the surface owner when the surface owner initially leased the land. The court made it clear that the language "other amounts contracted for" by the surface owner are linked to the damage to the surface owner's estate. *Robison*, 8 S.W.2d at 660. *See also Col-*

*quitt v. Gulf Production Co.*, 52 S.W.2d 235 (Tex.Comm'n App.—1932, judgm't adopted). This "damage to the soil" rationale does not apply here since the surface owners received their compensation at the time of the Mobil lease in 1925 and the assignment to Scott did not damage the surface.

In addition to the "damages to the soil" rationale for compensation to the surface owner under the Relinquishment Act, compensation has been justified in some cases as compensation for the service of acting as agent for the State. *Cross v. Shell Oil Co.*, 144 Tex. 78, 188 S.W.2d at 378; *Empire Gas & Fuel Co. v. State*, 121 Tex. 138. 47 S.W.2d at 265; A.W. Walker, Jr., *The Texas Relinquishment Act, supra,* note 2 at 274.[3] Under this rationale, Exxon's claim for compensation also fails. Exxon chose not to participate in developing and prosecuting the suit against Mobil. Thus, Exxon has not provided its principal (the State) any valuable service that might entitle it to any part of the settlement.

And finally, it was error for the court of appeals to rely on a stipulation signed by the Commissioner of the General Land Office arguably conceding that Exxon was entitled to a share of the settlement proceeds. Because there is nothing in the record to show that the Attorney General approved the stipulation, it was not binding on the State.

For all of these reasons, the judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

Concurring opinion by KILGARLIN, J.

KILGARLIN, Justice.

I concur in the court's result. As I understand it, this dispute boils down to the following legally relevant facts and circumstances. Exxon owns an undivided

---

**3.** It should also be added that the Texas Legislature has recently amended the Texas Natural Resources Code to statutorily set forth the duties of the owner of the soil as agent for the State of Texas. See Tex.Nat.Res.Code Ann. § 52.189(b) (Vernon Supp.1988). While this statute is not applicable to the case at hand because it was not in effect at the time the events giving rise to this lawsuit occurred, it does reflect the public policy that Relinquishment Act surface owners owe to the people of Texas a fiduciary duty and a duty of utmost good faith.

30.937% interest in the surface of mineral classified land covered by the Mobil lease. As a Relinquishment Act surface owner, Exxon is entitled and continues to receive royalty payments from production on the lease, which, in settlement of a separate lawsuit, has now been assigned to Wally Scott, Trustee for the General Land Office. The only issue is whether Exxon, as a Relinquishment Act surface owner, is entitled to 30.937% of one-half of the working interest assigned to Scott, Trustee. I agree that the trial court was correct in rendering summary judgment against Exxon's claim.

The thrust of Exxon's argument is that the State and other surface owners conspired to settle their litigation with Mobil in such a way as to exclude Exxon from the benefits of the settlement and deprive Exxon of its exclusive right to lease the State's minerals. I submit that Exxon's arguments that it should share in the settlement are unsupported by any legal authority. Exxon's arguments also run counter to the established rule "that legislative grants of property, rights, or privileges must be construed strictly in favor of the state on grounds of public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld." *Empire Gas & Fuel Co. v. State*, 121 Tex. 138, 158–59, 47 S.W.2d 265, 272 (1932).

So long as Exxon continues to receive its share of royalty payments from production, it has no legal basis to complain that the State may be getting more out of its minerals than it would under an ordinary lease to a third party. In addition, Exxon's right to execute any new lease would be contingent on invalidity of the Mobil lease. Only the State has authority to seek invalidation of a Relinquishment Act lease, *Colquitt v. Gulf Production Co.*, 52 S.W.2d 235, 238 (Tex. Comm'n App.1932, judgm't adopted), and the State has settled and abandoned its claims that the Mobil lease is no longer in effect. Exxon lacks standing to assert otherwise.

I consider the court's opinion to contain overly simplistic representations of the holdings of certain cited cases. Also, I do not ascribe to some of the broad pronouncements and sweeping statements to be found in the language of the opinion. Nevertheless, I agree that the trial court's summary judgment was correct and should be affirmed. Accordingly, I concur in the court's judgment.