**STATE of Texas, Appellant,**

v.

**Lynn D. DURHAM and Clarence Scharbauer, Jr., Trustees Under the Will of Fred Turner, Jr. and Juliette Turner, Deceased, et al., Appellees.**

**No. 3–90–071–CV.**

Court of Appeals of Texas, Austin.

Feb. 13, 1991.

Rehearing Overruled March 13, 1991.

Dan Morales, Atty. Gen., Jose Manuel Rangel, Asst. Atty. Gen., David R. Richards, Richards, Wiseman & Durst, Austin, for appellant.

Corby Considine, Cotton, Bledsoe, Tighe & Dawson, Midland, for Lynn D. Durham, et al.

Cecil E. Munn, Cantey & Hanger, Fort Worth, for The Cantey, Hanger & McMahon appellees.

Ed Small, Small, Craig & Werkenthin, Austin, for The Collard Heirs.

Linda M. Hood, Fletcher L. Yarbrough, Carrington, Coleman, Sloman & Blumenthal, Dallas, for James Hunt and Nancy Hunt Powell.

Before CARROLL, C.J., and POWERS and GAMMAGE, JJ.

CARROLL, Chief Justice.

The State sued the successors of a Relinquishment Act[1] landowner and his col-

---

1. The complex legislative history of the Relinquishment Act is as follows: 1919 Tex.Gen. Laws, 2d C.S., ch. 81, at 249, *amended by* 1921 Tex.Gen.Laws, 1st C.S., ch. 38, at 112, *repealed by* Tex.Rev.Civ.Stat. sec. 2, at 2419 (1925), *recodified as* Tex.Rev.Civ.Stat. sec. 1, arts. 5367–5379, at 1512 (1925), *amended by* 1939 Tex.Gen. Laws, tit. Lands–Public, ch. 3, § 4–a, at 474, *amended by* 1949 Tex.Gen.Laws, ch. 474, at 880, *amended by* 1949 Tex.Gen.Laws, ch. 559, at 1096, *amended by* 1975 Tex.Gen.Laws, ch. 635, at 1938, *repealed by* Natural Resources Code, 1977 Tex.Gen.Laws, ch. 871, art. I, sec. 2(a)(1), at 2689, *recodified as* Natural Resources Code, 1977 Tex.Gen.Laws, ch. 871, art. I, sec. 1, §§ 52.-171–.185, at 2457, *amended by* 1979 Tex.Gen. Laws, ch. 384, at 860, *amended by* 1983 Tex.Gen. Laws, ch. 81, § 21(k), at 405, *amended by* 1985 Tex.Gen.Laws, ch. 624, §§ 44–45, at 2319, *amended by* 1985 Tex.Gen.Laws, ch. 652, at 2407, *amended by* 1985 Tex.Gen.Laws, ch. 923, § 18, at 3101, *amended by* 1987 Tex.Gen.Laws, ch. 167, § 5.01(a)(31), at 1359, *amended by* 1987 Tex.Gen.Laws, ch. 912, §§ 1–3, 6, at 3086, *amended by* 1987 Tex.Gen.Laws, ch. 948, §§ 30–31, at 3176. As stated above, our interpretation in this cause is limited to the version of the Act contained in articles 5367 to 5379 of the Revised Statutes, prior to the 1939 amendment.

The 1925 Revised Statutes are in an official two-volume printing, which contains the complete text of the act that adopted the 1925 Revised Statutes. Due to the great length of the act adopting the 1925 Revised Statutes and the act adopting the 1925 Penal Code and Code of Criminal Procedure, the legislature dictated that

leagues for the profits obtained from an oil and gas transaction which occurred more than half a century ago. The district court granted summary judgment against the State. We will affirm.

## BACKGROUND

This case involves the State's attempt to impose fiduciary duties on the Relinquishment Act landowners who represent it for the limited purpose of securing oil and gas leases. In 1934, Fred Turner, Jr. negotiated an oil and gas lease on Relinquishment Act land in Pecos County. The lease was validated by a Travis County district court, and, pursuant to the Act, Turner and the State shared the consideration paid by the lessee. (At that time, the bonus involved was the largest the State had received in the subject field.) Subsequently, Turner acquired a larger interest in the mineral estate. The State now seeks a share of that mineral interest and of Turner's profits for the past 56 years.

We will briefly review the lease transaction, Turner's subsequent acquisition, and the history of this lawsuit.

### I. The Lease Transaction

The lease transaction began with a receivership proceeding. In November 1933, the State brought a trespass to try title action against persons claiming an interest in a 3.97–acre tract (the Reid tract) of Relinquishment Act land in the Yates field in Pecos County. The State alleged that wells on adjacent land were draining the tract. Apparently because of a title dispute, none of the claimants had drilled a well to offset the drainage. The State sought appointment of a receiver for the tract and a determination of who owned the surface estate. In March 1934, the court appointed a receiver and ordered all of the claimants to surrender possession to him.

The receiver advertised for bids and lease proposals. One of the claimants,

Fred Turner, Jr., submitted an oil and gas lease between himself and A. Fasken (the Fasken lease). The Fasken lease provided for a $20,000 bonus, $2 per acre annual rental, and a one-eighth royalty to be shared equally by the State and Turner. The Fasken lease further provided that any party to the lease could assign his interest at any time.

The court rendered judgment in State v. Reid on April 2, 1934. The judgment had three significant aspects: (1) it awarded Turner fee simple title to the Reid tract; (2) it recognized that the Fasken lease was the most advantageous lease proposal, then modified the lease to make it even more favorable to the State and declared it valid; and (3) it dismissed the receiver.

Fasken later conveyed his working interest in the eastern one-half of the Reid tract to M.D. Bryant, reserving for himself a three-sixteenths overriding royalty and a $5,000 production payment. Two wells were completed on the Reid tract, both of which proved to be major producers in the Yates field.

### II. Turner's Subsequent Acquisition (the Midland Transactions)

Immediately after the Fasken lease was validated, a series of transactions occurred between Fasken, Turner, and Midland Producing Company (Midland), an oil and gas developer which was incorporated in late April 1934. The State alleges that Turner had planned all of these transactions before he executed the Fasken lease.

First, in May 1934, both Turner and Fasken conveyed their interests in the Reid tract to Midland. Fasken received one-quarter of Midland's stock in return for his seven-eighths working interest in the western half and three-sixteenths overriding royalty in the eastern half. Turner also received one-quarter of Midland's stock, in return for his one-sixteenth royalty in the entire tract and a ten-year management

the 1925 Revised Statutes, Penal Code, and Code of Criminal Procedure would not be printed as part of the regular session laws in *Texas General Laws.* 1925 Tex.Gen.Laws, ch. 104, at 282. Similar action was taken by the legislature in

promulgating the revision of the criminal law in 1856, and in the revisions of both the civil and criminal law in 1879, 1895, and 1911. Because these volumes are difficult to locate, we will cite to the more accessible 1919 General Laws.

services contract. Second, in June 1934, Midland conveyed one-quarter of its interest in the Reid tract to Turner and 23.75% to Fasken. (Midland made similar assignments to its other shareholders.)

In 1937, Fasken conveyed his entire interest in the Reid tract to Turner. Thus, three years after judgment in State v. Reid, Turner owned 48.75% of Midland's interest in the Reid tract.

### III. *This Lawsuit*

The State asserts that it had no notice of the Midland transactions until the early 1960s, when a disgruntled former employee of Turner, Andrew Knickerbocker, wrote the attorney general with information regarding the State's "claim" against Turner. Knickerbocker sought a "bounty" in return. A first assistant attorney general reviewed the information and concluded that there was "no basis under the law" for pursuing the alleged cause of action.

Twenty-five years later the State brought this suit against the successors to the interests that Turner and the other original shareholders had held in Midland, alleging that the Midland group conspired to defraud the State of its share of Turner's interest. The State seeks $162 million in actual and punitive damages, plus interest and attorney's fees.

All of the defendants moved for summary judgment against the State and the State moved for partial summary judgment against all of the defendants. The district court granted the defendants' motions. The State now appeals, arguing that the trial court erred in granting summary judgment against it and in denying it partial summary judgment.

### THE CONTROVERSY

The State's claim against all of the defendants hinges on what duty Turner owed the State and whether Turner committed fraud. The crux of the State's complaint is that Turner received benefits from the Reid tract that he did not share with the

State. The State does not argue that Turner and Fasken could not assign their interests.[2] Rather, it complains that they assigned their interests to a corporation in which Turner held stock. The State contends that Turner was obligated to share *any* interest he *ever* acquired in the Reid tract's oil and gas, because he owed the State a fiduciary duty.

We conclude that Relinquishment Act landowners did not owe the State a fiduciary duty in 1934. We further conclude that even if Relinquishment Act landowners did owe such a duty, Turner was relieved of his obligation because his agency relationship with the State had terminated before the Midland transactions.

### DISCUSSION AND HOLDINGS

### I. *Caveats*

We begin with two caveats. First, a statement about the evidence: generally, in an appeal of a summary judgment, we must accept as true the nonmovant's version of the facts to the extent it is supported by the summary judgment evidence. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985). The State alleges that Turner planned the Fasken lease and the Midland transactions well before judgment in State v. Reid as a means of obtaining profits from the Reid tract without sharing them with the State. We conclude that, even under the State's version of the facts, the summary judgment should be sustained. Consequently, we will assume that the State's allegations are true and dispense with a detailed analysis of the summary judgment evidence.

Second, our holdings have a limited scope. This appeal requires a determination of the duty a surface owner owed the State in 1934. Thus, we will be interpreting the Relinquishment Act as it existed in 1934. Since then, the legislature has amended the Act to impose express duties on surface owners. We do not purport to interpret these amendments or to other-

---

**2.** The Act expressly authorized assignment of the lessor's and lessee's interests. 1919 Tex.Gen. Laws ch. 81, § 2, at p. 249. The State also

admits that it would not have asserted any claim if Fasken's interest had been assigned to anyone other than Turner.

wise define the duties a Relinquishment Act landowner owes the State today.

## II. *The Duties of a Relinquishment Act Landowner*

The first issue is what duty surface owners owed the State in 1934. The State contends that surface owners owed a fiduciary duty. We disagree.

### A. *Overview of the Relinquishment Act*

Passed in 1919, the Relinquishment Act applies to permanent school fund lands. The oil and gas underlying these lands belong to the State. The Act was an attempt to gain the surface owners' cooperation in the development of the oil and gas. 1919 Tex.Gen.Laws, ch. 81, § 1, at 249. The Act *"constitutes the owner of the soil the [State's] agent ... and in consideration therefor, relinquishes and vests in the owner of the soil an undivided fifteen-sixteenths of all oil and gas"* underlying the land. *Id.* (It is this emphasized language regarding the landowner as "agent" that underlies the State's claim.)

Initially, it was thought that the Act conveyed fifteen-sixteenths of the oil and gas to the surface owners while reserving for the State a share of the delay rentals and an undivided one-sixteenth of the oil and gas as a royalty. Walker, *The Texas Relinquishment Act,* 1 Inst. on Oil & Gas L. & Tax'n 245, 259 (1949). Detractors complained that the Act was an unconstitutional donation of assets of the permanent school fund. *Id.* at 259–260.

The supreme court upheld the constitutionality of the Act in *Greene v. Robison,* 117 Tex. 516, 8 S.W.2d 655 (1928), concluding that the Act did not donate the oil and gas to the surface owners. *Id.* 8 S.W.2d at 658. Rather, the court reasoned, the Act merely made the surface owners the state's representatives for the purpose of procuring oil and gas leases for Act land. *Id.* Under the Act, the State and the surface owner share equally the consideration paid for the lease, with the surface owner's share being compensation for damage to

his lands. 1919 Tex.Gen.Laws, ch. 81, § 18; *Greene,* 8 S.W.2d at 660.

### B. *The State's Arguments*

The State insists that 1934 surface owners owed the State a fiduciary duty because they were ordinary agents. We disagree.

 In an ordinary agency relationship, the agent owes the principal a fiduciary duty. *Field Measurement Services, Inc. v. Ives,* 609 S.W.2d 615, 619 (Tex.App. 1980, writ ref'd n.r.e.). However, an agency relationship cannot be presumed: it must be proved. *Buchoz v. Klein,* 143 Tex. 284, 184 S.W.2d 271 (1944). For an ordinary agency relationship to exist, the alleged principal must have the right to control the means and details of the alleged agent's work. *Johnson v. Owens,* 629 S.W.2d 873, 875 (Tex.App.1982, writ ref'd n.r.e.); *First Nat'l Bank v. Bullock,* 584 S.W.2d 548, 551–552 (Tex.Civ.App.1979, writ ref'd n.r.e.). *See also Marriott Bros. v. Gage,* 717 F.Supp. 458, 460 (N.D.Tex. 1989).

 The State did not have any control over the surface owner under the original version of the Act. The State did not select the surface owner to be its representative: the surface owner acquired his status solely through ownership of Act land. 1919 Tex.Gen.Laws, ch. 81, § 1, at 249. *See also Lewis v. Oates,* 145 Tex. 77, 195 S.W.2d 123, 133 (1946). The State could not itself lease Act land: the surface owner had exclusive leasing authority. *Standard v. Sadler,* 383 S.W.2d 391 (Tex.1964). Further, the State could not terminate the surface owner's authority to lease the land, except under very limited circumstances. 1919 Tex.Gen.Laws, ch. 81, § 4, at 250. *See also State v. Standard,* 414 S.W.2d 148, 153 (Tex.1967). Therefore, the relationship between the surface owner and the State was not one of ordinary agency. Accordingly, we conclude that the surface owner did not owe the State a fiduciary duty.

Our conclusion is consistent with the Act's requirement that landowners drill offset wells in the event of drainage from

neighboring tracts. *See* 1919 Tex.Gen. Laws ch. 81, § 3, at p. 250; *Norman v. Giles*, 148 Tex. 21, 219 S.W.2d 678, 684 (1949). A fiduciary duty encompasses a prohibition against self-dealing. That landowners could self-deal by drilling on their own lands refutes the contention that they owed the State a fiduciary duty.

The State advances two arguments in support of its claim. First, the State contends that the term "agent" in the Act, as applied to surface owners, imposes a fiduciary duty. Second, the State asserts that the supreme court's decision in *State v. Standard*, 414 S.W.2d 148 (Tex.1967), mandates a reversal of appellees' judgment. Neither of these arguments is compelling.

### 1. The Statute's Terminology

The State places great emphasis on the use of the term "agent" in the Act to describe the landowner. The State notes that the legislature is presumed to know how courts have interpreted the words it uses. *See Koy v. Schneider*, 110 Tex. 369, 221 S.W. 880, 889 (1920). Because ordinary agents owe their principals a fiduciary duty, the State argues, the legislature must have intended, by using "agent," to impose a fiduciary duty on Relinquishment Act landowners. We do not agree.

Words in statutes are to be given their ordinary meaning, unless, among other things, they are used as words of art. Tex. Gov't Code Ann. § 312.002 (1988). Words must be attributed their plain meaning unless a contrary intention is apparent from the context. *Taylor v. Firemen's and Policemen's Civil Service Comm'n*, 616 S.W.2d 187, 189 (Tex.1981); *Bd. of Land Comm'rs v. Weede*, Dallam 361, 361 (Tex. 1840). The context of the Act does not indicate that the legislature intended to use "agent" as a word of art. The legislature did not authorize the State to control the landowner. In addition, it did not, at least initially, expressly impose a fiduciary duty on surface owners.[3]

Further, the term "agent" is not always a word of art. If it were, the secretary of state would owe a fiduciary duty to all persons for whom he must act as "agent" for service of process under Tex.Civ.Prac. & Rem.Code Ann. § 17.044(a) (1986). Such a result is clearly incorrect. Therefore, the mere use of the term "agent" in the Act does not mandate the imposition of a fiduciary duty on surface owners. *See* 2A C.J.S. Agency § 4 (1972) ("The term is ... often used ... in a more restricted sense than that commonly given it, and where so used, its significance must generally be determined by a study of the context.").

### 2. The State v. Standard Case

Next, the State relies heavily on the supreme court's decision in *State v. Standard*, arguing that a 1934 surface owner could never acquire a working interest in the leases he procured for the State. We disagree.

The controversy in *Standard* centered around a contract that was part of the oil and gas lease the surface owner procured. The contract gave the surface owner: (1) an option to acquire a share of the working interest; (2) an option for the job of pumper in the event of successful drilling operations; and (3) a right to receive $500.00 per drilling location as liquidated damages to crops.

Looking solely at the option to acquire the working interest, the supreme court held that the lease was invalid. *Standard*, 414 S.W.2d at 153. Significantly, the court couched its analysis in terms of the requirements of the Act, not the "duties" of the surface owner. The court held that the surface owner exceeded his authority because "the leasing power of the surface owner is limited to the execution of an oil and gas lease for bonus, rental and royalty considerations." *Id.* at 153. It further held that the surface owner did not comply with the statute when he included the working interest option in the lease without sharing that consideration with the State.

---

**3.** In 1985, the legislature amended the Act to impose specific fiduciary duties on surface owners. Tex.Nat.Res.Code Ann. §§ 52.188–.189 (Supp.1990). The amendments do not apply retroactively. *Scott v. Exxon Corp.*, 763 S.W.2d 764, 767 n. 3 (Tex.1988).

*Id.* Thus, the factors mandating invalidation of the lease were the failure to strictly comply with the Act's dictates and the failure to share lease compensation with the State.

These factors are not present in this case. Turner strictly complied with the Act, and shared all of the benefits he received under the Fasken lease with the State. Accordingly, we reject the State's contention that *Standard* mandates a reversal of this case.

## C. *Statutory Agency*

No Texas court has addressed the scope of the duty a 1934 Relinquishment Act landowner owed the State. We conclude that surface owners are special statutory agents who owe the State only those duties expressly imposed by the Act. The supreme court has recognized only express duties and has rejected every opportunity to imply a general fiduciary duty. *See, e.g., Greene,* 8 S.W.2d 655 (surface owners owe the duty to obtain the best consideration for an oil and gas lease, and to share that consideration equally with the State).

█ To the extent Turner procured the Fasken lease, he did not breach any duties expressly imposed by the Act. Turner obtained the best consideration for the Fasken lease. The State v. Reid court determined that the Fasken lease was the most advantageous proposal submitted to the receiver. The State itself boasted that the bonus it received under the Fasken lease was the highest ever for the Yates field. Moreover, all of the other leases executed at the same time in the Yates field provided for similar or less consideration.

Turner shared with the State the consideration he received pursuant to the terms of the Fasken lease. Turner did later acquire another interest in the oil and gas and did not share the related compensation with the State. However, Turner did not acquire that interest under the terms of the Fasken lease. Rather, he received it in exchange for his royalty and a ten year management services contract. The royalty Turner conveyed to Midland was cost-free, whereas the one Midland conveyed to

him was partially cost-bearing. We hold that, as a matter of law, Turner did not breach any of the surface owner's duties by entering into the Midland transactions.

## III. *Termination of Turner's Status*

█ Appellees argue that, even if a 1934 surface owner did owe the State a fiduciary duty, Turner's obligations were terminated before execution of the Fasken lease. We agree. We conclude that Turner's agency was terminated by the failure to offset drainage from the tract, by the receivership, and by the execution of the Fasken lease.

## A. *Failure to Offset Drainage*

First, Turner's alleged agency was terminated by the failure to offset drainage from adjacent tracts. A surface owner's leasing authority terminates if the surface owner fails to drill an offset well within 100 days of the discovery of oil and gas on adjoining lands. 1919 Tex.Gen.Laws, ch. 81, § 3, at p. 250. Termination is automatic upon expiration of the 100–day period. *Norman v. Giles,* 148 Tex. 21, 219 S.W.2d 678, 684 (1929).

The State v. Reid court found that the Reid tract had been subject to drainage for over five years before the commencement of the case. Consequently, Turner's authority to act for the State and, therefore, his obligations to the State were automatically terminated before the State filed its petition, and so Turner did not owe any duties to the State that he could have breached.

## B. *The Appointment of a Receiver*

Second, even if Turner's alleged agency had not been terminated by the failure to offset drainage, it was terminated by the receivership. The State v. Reid court ordered all of the Reid tract claimants to surrender possession of the land to the receiver, who was charged with obtaining lease proposals. Under these circumstances, Turner was not and could not have been the State's leasing agent.

The State insists that the receivership was irrelevant, noting that the Fasken lease calls Turner the State's "agent." This does not affect our analysis. In determining the existence of an agency relationship, we look at the substance of the parties' arrangement, not the titles they use. *Daily Internat'l Sales Corp. v. Eastman Whipstock, Inc.,* 662 S.W.2d 60, 63 (Tex. App.1983, no writ).

### C. *Execution of the Lease*

Finally, Turner's alleged agency was terminated by execution of the Fasken lease. A Relinquishment Act landowner represents the State only for the limited purpose of procuring a lease. 1919 Tex.Gen.Laws ch. 81, §§ 1–2, at pp. 249–250. Once a lease is executed, the relationship ends. *See Scott v. Exxon Corp.,* 763 S.W.2d 764, 767 (Tex.1988); *Colquitt v. Gulf Production Co.,* 52 S.W.2d 235, 238 (Tex.1931). *See also* Note, *Texas Relinquishment Act—Benefits of Postleasing Transactions are not Apportionable Between the State and the Surface Owner,* 20 Tex.Tech L.Rev. 203, 217 (1989). Thus, Turner was no longer the State's representative after the Fasken lease was executed.

### D. *Turner's Right to Share in the Lease Consideration*

The State contends that Turner was not entitled to share the lease proceeds if he was not the State's agent with respect to the Fasken lease. We disagree. An owner of Act land is entitled to a share of the consideration paid for a lease, regardless of whether he procures it. *Norman v. Giles,* 219 S.W.2d 678, 685 (Tex.1949). This is apparently because the surface owner's share is compensation for damage to his land. *See Greene,* 8 S.W.2d at 600. Moreover, the State v. Reid court determined that Turner was entitled to share in the Fasken lease proceeds. Accordingly, the earlier judgment is res judicata as to that issue. This contention is overruled.

### CONCLUSION

We conclude that a 1934 Relinquishment Act landowner owed the State only those duties expressly set forth in the Act and not a fiduciary duty. Accordingly, Turner did not breach any duty that a surface owner owed the State by entering into the Midland transactions.

Even if a 1934 surface owner did owe the State a fiduciary duty, Turner did not owe that duty to the State at the time of the Midland transactions because his representation had terminated. This termination resulted from the failure to offset drainage, from the receivership, and from the execution of the Fasken lease.

All of the State's points of error are overruled. The summary judgment against the State and in favor of the defendants is affirmed.

GAMMAGE, J., not participating.