**ALWORTH et al. v. MORRIS et al.**
(No. 635.)

Court of Civil Appeals of Texas. Eastland.
July 12, 1929.

HICKMAN, C. J. The appeal is from an order overruling a motion by appellants to vacate and dissolve a receivership. Upon the application of appellees Morris Bros., the court appointed Donald L. Kinnaird receiver of an oil lease owned jointly by the parties, and of all personal property situated thereon. Upon the lease at the time of the appointment of the receiver was a producing oil well and another well in the process of being drilled. The appellant Alworth originally owned the entire lease, including the producing well. He sold an undivided one-fourth interest to Morris Bros., for which interest they are indebted to him for approximately one-half of the purchase price, a one-eighth interest to W. B. Anderson, and a one-eighth interest to Jack McGibben, leaving Alworth as the owner of an undivided one-half interest. After the appointment of the receiver, without notice or hearing, appellants filed a motion to dissolve and vacate the receivership. The motion having been overruled, this appeal follows.

The main suit to which the receivership is ancillary is not before this court. The case was advanced upon motion of appellees, in order that same might be determined prior to adjournment. We have carefully considered the record and briefs, but because of the short time remaining before adjournment and the number of advanced cases and motions for rehearing pending we shall not be able to write fully upon the many questions presented.

This appeal can well be disposed of by a consideration of the grounds upon which appellees prayed for the appointment of a receiver and the evidence adduced upon the hearing on motion to vacate. At the time the receiver was appointed, Alworth was in possession, operating the property under the terms of a written contract. A copy of this contract was attached to plaintiff's petition and made a part thereof "for all purposes." This contract was as follows:

"Exhibit A.

"This agreement, made and entered into this the 29th day of September, A. D., 1928, by and between T. J. Alworth, of Eastland county, Texas, hereinafter called party of the first part, and S. H. Morris, J. D. Morris and W. B. Anderson, of Eastland county, Texas, hereinafter styled parties of the second part, witnesseth:

"That all of the parties to this contract, both parties of the first part and parties of the second part, are the owners of a certain oil and gas lease upon the following described land, to wit: The W. 98½ acres of the N. W. ¼ Sec. 4 and the W. 80 acres of the N. E. ¼ of Sec. 9, all in Block 4, H. & T. C. Ry. Co. Survey, Eastland County, Texas. On which

Turner, Seaberry & Springer, of Eastland, for appellants.

Grisham Bros., of Eastland, for appellees.

said lease there is now a producing well and personal property used in connection with said lease and owned by all parties hereto, and desire to enter into this agreement for the purpose of the development, maintenance and operation of said lease.

"Now, therefore, for and in consideration of the premises and of the covenants and agreements hereinafter contained to be paid, kept and performed by each party hereto, they do hereby mutually agree to the following terms, stipulations and conditions of this contract, to wit:

"Party of the first part shall, within a reasonable length of time from the date hereof, begin the drilling of a second well upon said leased premises and continue the drilling thereof with diligence to a depth equal to the depth of the well now on said leasehold premises, unless oil or gas in paying quantities are found at a lesser depth; and upon the completion thereof shall upon similar conditions drill a third well upon said leasehold, such wells to be drilled under and upon the following terms and conditions, to wit:

"Parties of the second part are to furnish all cordage, tools, equipment, and machinery belonging to them and now situated upon said leasehold estate.

"Party of the first part is to provide all labor for and upon such two additional wells.

"All casing, fuel, water, taxes and individual expenses necessary for the drilling and completion of said two additional wells shall be paid for from the receipts of sale of oil and gas from the well now on said lease. The drilling, completion and maintenance of said wells now on said lease or hereafter to be drilled, the business management of said leasehold property and contracts concerning the same, and in connection therewith, shall be under the personal charge and care of party of the first part, who shall keep a full, accurate and true record of all receipts and disbursements made in connection therewith, which record shall be open at all times to the inspection of parties of the second part.

"All proceeds from the sale of oil and gas from said lease shall be paid by the purchaser to party of the first part and his receipt therefor shall be in full acquittance of said purchaser as to all interest holders under this lease.

"It is further agreed by all parties hereto that a treasurer shall be selected by all parties to this contract who shall be required to give bond in such amount as may be agreed upon.

"It is further agreed that 50% of all receipts from the sale of oil and gas from said lease shall be used in the development, operation and maintenance of said lease and the remaining 50% of said receipts shall be paid by the treasurer quarterly, to the interest holders as their interest may appear.

"Should any of the interest holders in said lease desire to sell or dispose of their interest in said lease and leasehold estate, and receive a bona fide offer therefor either or all of the interest holders shall have, and if it is hereby given them, the option of purchasing said interest at the same price of such bona fide offer, and in the event they do not wish to purchase said interest, then in that event they shall join in the assignment to sell said lease and leasehold estate at the same price of such bona fide offer, and they hereby agree to either purchase said interest or sell the entire lease, in the event of such bona fide offer.

"Regular meetings of the interest holders shall be held on the first Monday of each month and at such meetings there shall be made a written report showing the conditions of said property, the receipts and disbursements and the amount of money on hand in the treasury.

"In witness whereof we have signed this contract in triplicate, this the 29th day of September, A. D., 1928.

"[Signed]  T. J. Alworth,
"S. H. Morris,
"J. D. Morris,
"First Party.
"W. B. Anderson,
"Second Parties."

We recognize the correctness of the contention of appellees that the trial court is vested with discretion in the matter of the appointment of receivers. That, however, is not an unbridled discretion, dependent upon the views of the particular trial court making the appointment. Were it so, then it would be idle for the law to provide for an appeal from such an order and a review thereof by this court. The discretion vested by law in the trial court is a judicial discretion, and our power to review carries with it the corresponding power and duty to reverse the judgment of the trial court, if, in our opinion, in the exercise of what we deem to be a sound judicial discretion, the receiver should not have been appointed. The power to appoint a receiver, and thereby take from a party the right to control his own property, is a special and peculiar power, which courts of equity must of necessity possess, but should rarely exercise. It is our opinion that the facts adduced upon the trial of this motion establish that the receivership was not justified. Alworth had the right under his contract to the management, control, and operation of the leased premises. The effect of the appointment of a receiver was to divest him of that which he had been granted by his contract and vest same in a person not of his choosing. That action should not have been taken, except upon a showing of such misuse by him of the powers conferred by the contract as that the continued operation by him would result in injury to the property rights of appellee.

The evidence fails to establish this condition of affairs.

■ There are four particulars named in the petition in which a breach of the contract by appellant Alworth is alleged. In the first place it is alleged that he was not diligent in his drilling operations. The evidence discloses no unreasonable delays. Drilling began the last of December, and on March 5th a depth of about 1,345 feet had been reached. The evidence shows delays caused by the freezing of the water in the water lines, by insufficient money with which to operate, and by reason of the fact that the equipment with which he operated was old and required repairs and replacements. This equipment was furnished by appellees. At the time of the appointment of the receiver work was actually in progress, Alworth had made arrangements to procure the last string of casing necessary to complete the well, and this casing was actually upon the ground at the well. We are unable to understand how a receiver without any funds could operate this property with greater dispatch than same was being operated by appellants. There is no showing that the receiver had any funds with which to purchase casing and other materials for the completion of the well, and the casing which Alworth had procured was removed from the premises by the parties from whom same was procured after the receiver was appointed. The only possible method for operating this property by a receiver would be by incumbering same with liens. It would be inequitable, in our opinion, for a receiver to create liens upon the property of appellants in invitum, or, what amounts to the same thing, to issue receiver's certificates against it.

■ Another allegation of breach of contract is that appellant Alworth failed and refused to join appellees in the selection of a treasurer as provided in the contract. This allegation is not supported. Had the parties desired to select a treasurer, they could have proceeded therewith, and the fact that no treasurer had been selected is not chargeable wholly to Alworth. All parties alike failed in that regard.

■ The third breach alleged was the failure and refusal of Alworth to distribute to interest holders one-half of the proceeds derived from the sale of oil and gas produced from the premises. Appellants contend that, by a proper construction of the contract as a whole, appellees were not entitled to one-half of the gross proceeds, but to one-half of the net proceeds. We do not find it necessary to pass on this contention, for, adopting the construction insisted upon by appellees, that they were entitled to have one-half of the gross proceeds distributed, still we do not think the failure to distribute same justified the appointment of a receiver. The amount was relatively small. There was no treasurer to distribute same. All of the gross proceeds collected by Alworth had been used in the drilling of the lease for the joint benefit of all, and there is no allegation or proof that any was improperly expended. There was no allegation or proof that Alworth was insolvent. Further, the plaintiffs are indebted to Alworth largely in excess of any amount which might be due them from him. The appointment of a receiver could not aid them in this regard.

■ Another allegation of a breach of the contract is the failure and refusal of Alworth to join in a monthly meeting on the first Monday in each month and furnish a written report, as provided in the contract. This allegation is not sustained. There is evidence that on one occasion one of the appellees invited Alworth to a meeting in the office of an attorney at Ranger on a certain night, not shown by his testimony to have been a night provided in the contract for such meeting, and that Alworth declined to attend this meeting on that night, on the ground that he was actively engaged in drilling on the night run. The meeting was in fact held without Alworth's presence, and the most that can be made of this alleged breach is that Alworth failed to attend a meeting held in an attorney's office on a night named by one of the appellees. No reason is suggested why the meeting was not held on the leased premises, so that Alworth could attend without additional delay of the drilling operations. We fail to see any breach of contract established by these facts.

■ Viewing the record as a whole, most of the claims relied upon by appellees appear to us to be unsubstantial. The only complaint seems to have been that it was the opinion of the appellees that a certain string of casing should not be set at the particular depth at which appellant Alworth thought same should be set, and that the producing well should be pumped in a different manner to that in which Alworth was pumping same. It was a mere difference of opinion as to the method, and the contract between the parties vested that discretion in Alworth. There are no allegations or proof of any abuse of that discretion. To appoint a receiver upon an issue of fact of that nature would be tantamount to the court's sustaining the views of appellees and instructing the receiver to put those views into practice. The receiver so interpreted the court's action, for, with but slight, if any, investigation on his part, his first act after appointment was to make specific recommendations to the court as to the minute details of how to operate the property. These recommendations were made before sufficient time had elapsed within which to execute a bond, and embodied the plaintiffs' opinion on the subject, which but illustrates that the basis of this controversy is a mere difference of opin-

ion, and the appointment of a receiver was, in practical effect, but to substitute the opinion of plaintiffs for that of Alworth.

It is our opinion that the receivership should be vacated, and an order will accordingly be entered in this court, setting aside and vacating the receivership, and restoring the management and control of the property to appellants.

Reversed and rendered.

LESLIE and FUNDERBURK, JJ., concur.