STATE of Texas, Petitioner,

v.

Lynn D. DURHAM and Clarence Scharbauer, Trustees Under the Will of Fred Turner, Respondents.

No. D–0992.

Supreme Court of Texas.

March 31, 1993.

Dan Morales, Jose Manuel Rangel, David R. Richards, Philip Durst, Priscilla M. Hubenak, Liz Bills, Austin, for petitioner.

Cecil E. Munn, Fort Worth, Barry N. Beck, Midland, Ed Small, Austin, H. Carter Burdette, Fort Worth, Robert C. Bledsoe, Midland, Sloan B. Blair, Fort Worth, Gene McCoy, Fletcher L. Yarbrough, Dallas, Jack D. Maroney, Austin, Charles L. Tighe, Corby Considing, Julia E. Vaughan, Midland, and C.C. Small, Jr., Austin, for respondents.

## OPINION

GONZALEZ, Justice.

In this oil and gas case, the State seeks to impose fiduciary duties on surface owners of permanent school fund lands. The State filed suit against several individuals and entities seeking damages and a constructive trust under the Relinquishment Act of 1934.[1] It alleged that there existed a conspiracy to defraud the State of its share of royalties from oil and gas deposits which underlie permanent school fund lands. We review whether the respondents have established their entitlement to their take-nothing summary judgment against the State. The court of appeals affirmed the summary judgment. 804 S.W.2d 312. We reverse the judgment of the court of appeals and remand to the trial court for further proceedings.

The Relinquishment Act of 1934 applies to all land dedicated to the Permanent School Fund. Under this Act, the State retains ownership of the minerals underlying permanent school fund property, while the surface owner becomes the State's agent with the sole authority to negotiate and execute oil and gas leases on said lands.[2] The surface owner gets to keep one-half of the lease consideration for compensation for his or her services and for damages to the surface estate. *Scott v. Exxon Corp.*, 763 S.W.2d 764, 766 (Tex.1988).[3]

On March 5, 1930, the General Land office awarded Bob Reid a 101.35 acre tract of land in Pecos County, in what is known as the Yates Oil Field. Pursuant to the Relinquishment Act, Reid became the surface owner and the oil and gas was reserved to the State. The same day, Reid conveyed 3.97 acres of the tract to Fred Turner, Jr.; Turner did not file the deed until June 1933.

On May 18, 1933, Reid executed an oil and gas lease on the entire 101.35 acre tract, including the 3.97 acres, to M.D. Bryant. On

---

1. As the court of appeals notes, the Relinquishment Act's history is complex: 1919 Tex.Gen. Laws, 2d C.S., ch. 81, at 249, *amended by* 1921 Tex.Gen.Laws, 1st C.S., ch. 38, at 112, *repealed by* Tex.Rev.Civ.Stat. § 2, at 2419 (1925), *recodified as* Tex.Rev.Civ.Stat. § 1, arts. 5367–5379, at 1512 (1925), *amended by* 1939 Tex.Gen.Laws, tit. Lands–Public, ch. 3, § 4–a, at 474, *amended by* 1949 Tex.Gen.Laws, ch. 474, at 880, *amended by* 1949 Tex.Gen.Laws, ch. 559, at 1096, *amended by* 1975 Tex.Gen.Laws, ch. 635, at 1938, *repealed by* Natural Resources Code, 1977 Tex.Gen.Laws, ch. 871, art. I, sec. 2(a)(1), at 2689, *recodified as* Natural Resources Code, 1977 Tex.Gen.Laws, ch. 871, art. I. sec. 1 §§ 52.171–.185, at 2457, *amended by* 1979 Tex.Gen.Laws, ch. 384, at 860, *amended by* 1983 Tex.Gen.Laws, ch. 81, § 21(k), at 405, *amended by* 1985 Tex.Gen.Laws, ch. 624, §§ 44–45, at 2319, *amended by* 1985 Tex.Gen. Laws, ch. 652, at 2407, *amended by* 1985 Tex. Gen.Laws, ch. 923, § 18, at 3101, *amended by* 1987 Tex.Gen.Laws, ch. 167, § 5.01(a)(31), at 1359, *amended by* 1987 Tex.Gen.Laws, ch. 912, §§ 1–3, 6, at 3086, *amended by* 1987 Tex.Gen. Laws, ch. 948, §§ 30–31, at 3176.

2. According to the State, there are currently 1,444 Relinquishment Act leases still in effect.

3. The Relinquishment Act provides that in return for acting as the State's leasing agent, the surface owners are granted an undivided $^{15}/_{16}$ of all oil and gas underlying the lands. However, we have held that the Act does not vest any portion of the minerals in the surface owner; rather, the State retains full ownership, and the surface owner is given a right to share in the lease consideration. *Scott v. Exxon Corp.*, 763 S.W.2d at 766; *Greene v. Robison*, 117 Tex. 516, 8 S.W.2d 655, 658 (1928).

November 4, 1933, the State filed a trespass to try title suit against Reid, Bryant, Turner and others who claimed an interest in the tract. The State also sought the appointment of a receiver, alleging drainage from oil and gas wells on adjacent tracts.

The trial court appointed a receiver. On March 26, 1934, Turner executed an oil and gas lease to A. Fasken which provided for a $20,000 bonus, $2 per acre annual rental and a one-eighth royalty to be shared equally by the State and Turner. The lease also stated that any party could assign his interest at any time. Fasken intervened in the 1933 lawsuit asserting his interest in the property under the lease.

On April 3, 1934, the trial court rendered judgment that Turner held fee simple title to the 3.97 acres subject to the mineral interest of the State. The judgment also confirmed that Fasken had "a valid and subsisting oil and gas lease executed by Fred Turner, Jr. individually and as agent of the State of Texas, as lessor . . . .," set aside conflicting interests, discharged the receiver, and denied all other relief. The lease gave a ⅛th royalty to Turner and the State and provided a $20,000 bonus payment. On the same day as the judgment, Fasken transferred the east half of the lease to M.D. Bryant, reserving a ³⁄₁₆ths overriding royalty interest.

Turner, Fasken, Brian Hunt, and the law firm of Cantey, Hanger & McMahon entered into an agreement dated April 14, 1934, to form a corporation, to be named Midland Producing Company, for the purpose of drilling on the west half of the lease. In short, the incorporation agreement called for Turner and Fasken to convey their oil and gas mineral interests in the tract to the company, which was to redistribute mineral interests along with company stock to the signatories of the agreement. Turner received a 10-year management services contract with Midland.[4]

On November 27, 1937, Fasken conveyed his entire remaining interest to Turner. Thus, three years after the judgment in *State v. Reid,* Turner owned nearly fifty-percent of Midland's interest in the tract. Meanwhile, Midland completed two wells on the tract, both of which were major producers. It is undisputed that the additional interest acquired by Turner was not shared with the State.

In the early 1960's a former employee of Turner, Andrew Knickerbocker, wrote the Attorney General of Texas claiming knowledge of irregularities regarding the transactions. A first assistant Attorney General reviewed the information and concluded that there was "no basis under law" for pursuing the alleged cause of action.

Twenty-five years later, the State brought this suit against Lynn D. Durham et al., and three other groups of defendants alleging that the Turner–Fasken lease approved by the court in 1934 was a sham transaction as part of a conspiracy to defraud the State of its share of Turner's interest under the Relinquishment Act. The State filed a suit against successors to the interests of Turner and the other original shareholders of Midland Corporation, seeking an accounting, past damages, and to impose a constructive trust. The State requested $162 million in actual and punitive damages, plus interest and attorney's fees. Each of the four groups of defendants moved for a take-nothing summary judgment.

In addition to the above facts, the State's summary judgment evidence included the testimony of Andrew Knickerbocker, to the effect that the lease between Turner and Fasken was a sham, and that Fasken was a strawman through which Turner could obtain an interest in excess of that provided for by the Relinquishment Act. The respondents presented evidence of previous claims Knickerbocker had brought against Turner and his estate, characterizing him as a disgruntled

---

4. The agreement called for Turner to convey his royalty interest, and provide his management expertise in developing the lease. Additionally, the agreement required Fasken to convey his working interest in the west half and his reserved override in the east half of the lease. In return, the company was to convey to the signatory parties the company's ¹⁄₁₆th base royalty, its ³⁄₁₆ths overriding royalty in the east half of the field, and a ⅞ths free overriding royalty in the west half, ¼ to Fasken, ¼ to Turner, ⁴⁄₁₀ths to the law firm, and ¹⁄₁₀th to Bryan Hunt. The company distributed its stock to the parties in the same proportions.

former employee pursuing a vendetta. The respondents also offered their interpretation of the transactions by which Turner acquired an additional interest in the lease as ordinary business developments, not a preconceived plan as argued by the State. Well-established rules of summary judgment preclude consideration of this evidence and arguments offered by the respondents. The weight to be given a witness's testimony is a matter for the trier of fact, and a summary judgment cannot be based on an attack of a witness's credibility. *Great Am. R. Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Evidence favoring the non-movant must be taken as true, and all reasonable inferences must be indulged in the non-movant's favor. *Nixon v. Mr. Property Mgm't*, 690 S.W.2d 546, 549 (Tex.1985). Thus summary judgment cannot be based on the inferences that respondents would have us draw from the evidence. *Great American*, 391 S.W.2d at 47.[5]

The court of appeals rested its decision on the scope and duration of the duties owed by the surface owner to the State, concluding that Turner owed no fiduciary duty, or if he did it terminated upon either the occurrence of drainage, the appointment of the receiver, or execution of the lease. 804 S.W.2d at 315.

■ We agree with the court of appeals that the surface owner is not the State's general agent for all purposes. Within the scope of the Relinquishment Act, however, the surface owner is the State's agent to the extent that the State's assets are entrusted to the control of the surface owner, who must not abuse that trust. It is well settled that an agent charged with selling an asset for the owner owes a fiduciary duty to the owner, and that the agent violates this duty by acquiring the asset for his own benefit.

*Shannon v. Marmaduke*, 14 Tex. 109 (1855).[6] Also, without regard to any common-law agency duty, we have held that the Relinquishment Act prohibits the surface owner from acquiring a working interest in the permanent school fund minerals underlying his property. *State v. Standard*, 414 S.W.2d 148, 152 (Tex.1967). In *Standard*, the surface owner negotiated a Relinquishment Act lease which gave the surface owner (but not the State) an option to acquire a working interest. The Court held the lease was invalid because it provided for substantial consideration in which the State could not participate. *Id.* at 153. If the Turner–Fasken lease was intended as a vehicle to give Turner additional consideration not available to him under the Act, then he breached his duty to obtain fair compensation for the State.

■ The court of appeals concluded that the occurrence of drainage and the appointment of a receiver terminated Turner's status as the State's leasing agent. 804 S.W.2d at 318–19. In the *State v. Reid* litigation, the State obtained temporary orders appointing a receiver based on allegations of the failure to offset drainage. The court of appeals in the present case concluded Turner owed no duties because of our holding in *Norman v. Giles*, that should the surface owner allow drainage to continue for 100 days without beginning an offset well, the agency and any existing lease terminates, and the State may undertake to re-lease the property. *Norman v. Giles*, 148 Tex. 21, 219 S.W.2d 678, 684–85 (1949). This reasoning overlooks the fact that Turner in fact continued to act as an agent, and he, not the receiver, executed the lease on behalf of himself and the State, acknowledged and incorporated in the 1934 judgment. Furthermore, while temporary orders were obtained based on the allegation

---

5. The State also presented unsigned copies of letters purporting to show that Turner and the law firm actually gave Fasken the $20,000 he paid as a bonus for the lease, half of which was paid to Turner. The State also offered the testimony of Senator Ralph Yarborough, who was the assistant attorney general representing the State in the *Reid litigation*, that he would not have agreed to the 1934 judgment if he had known of the alleged preconceived plan.

The presence or absence of this evidence does not affect our disposition of the case, and we do not decide the issue of admissibility should this evidence be offered in any further proceeding.

6. This is exactly what the State alleges that Turner, respondents' predecessor in interest, did in this case. The State claims that Turner, the surface owner, entered into a scheme to in effect lease the minerals to himself. If this is true, this was a breach of Turner's agency duty to the State.

of drainage, the final judgment makes no determinations that conditions existed for the termination of the agency; to the contrary, the judgment expressly recognizes Turner's agency status as valid and subsisting.[7] Nothing in the *State v. Reid* litigation or the resulting 1934 judgment would allow Turner to obtain a lease on terms contrary to the interests of the State.

■ In addition to the court of appeals's reasons for upholding the summary judgment, the respondents argue that the present suit by the State represents an impermissible collateral attack on the 1934 judgment. The State has not sought to set aside the judgment; it has alleged fraud extrinsic to the judgment, and invokes the equity powers of the court to impose a constructive trust. Consequently, the State's claim is not a collateral attack. For example, in *Dilbeck v. Blackwell,* 126 S.W.2d 760 (Tex.Civ.App.–Texarkana 1939, writ ref'd), heirs of a decedent brought suit alleging that the executor committed fraud by obtaining probate court approval of a sale to third parties, who in fact were purchasing it on behalf of the executor. The court held that the remedy of constructive trust "is authorized as relief against extraneous fraud and is not in conflict with the rule against collateral attack upon the orders of the probate court involved." *Id.* at 761; *see generally* Hodges, *Collateral Attacks on Judgments,* 41 Tex.L.J. 164, 187 (1962).

■ Although couched in terms of res judicata, the principal argument of the dissenting Justices is that it just is not fair to be litigating events that occurred almost sixty years ago. However, the State in its sovereign capacity, unlike ordinary litigants, is not subject to the defenses of limitations, laches, or estoppel. *See Texas Co. v. State,* 154 Tex. 494, 281 S.W.2d 83, 89 (1955); *McNutt v. Cox,* 133 Tex. 409, 129 S.W.2d 626, 627 (Com. App.1939); *State v. Crawford,* 771 S.W.2d 624, 630 (Tex.App.—Dallas 1989, writ denied); *Lewis Cox & Son, Inc. v. High Plains Underground Water Conservation Dist. No. 1,* 538 S.W.2d 659, 662–663 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). We are sympathetic to the plight of the respondents but if we were to accept the res judicata views of the dissenting opinions, all a perpetrator of fraud needs do is keep the scheme concealed until the trial court signs a judgment in a related matter, then declare that he and his successors in interest are home free.

We recently held that the doctrine of res judicata will bar a subsequent suit involving the same subject matter as a prior suit "which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627 (Tex.1992). According to the facts alleged by the State, the trial court rendering the 1934 judgment did not and could not have adjudicated the issue of an undisclosed plan to acquire an improper interest. Thus, the judgment that the lease was "valid and subsisting" did not inoculate it against the alleged fraud the trial court did not adjudicate, indeed had no way of knowing about.[8]

The circumstances of *State v. Standard* as they relate to res judicata are similar to the alleged facts in this case. In *Standard,* the first litigation between the parties involved which of two leases covering a particular tract would be controlling: the one executed by B.L. Standard (the surface owner) to Trace Mining Company, or the one executed by the Commissioner of the General Land Office to Humble Oil and Refining Company.

7. The judgment provides: "2. The intervenor. A. Fasken, has a valid and subsisting oil and gas lease executed by *Fred Turner, Jr.,* individually and *as agent* of the State of Texas, as lessor ..." (emphasis added).

8. Justice Cornyn is not willing to give res judicata effect to the 1934 judgment's determination that Turner was the State's agent, a matter squarely at issue in that litigation. Yet he would use res judicata to preclude litigation of matters that were not, and could not, be litigated. The consistency of these two positions on res judicata is not readily apparent.

Justice Hecht would make much of the State's stipulation that the lease is a valid lease. In context, the "admission" of the State is that there is nothing irregular about the lease other than the secret plan for Turner to acquire a benefit from the minerals he should have shared with the State. The State's position is not inconsistent with the holding in *State v. Standard,* 414 S.W.2d 148 (Tex.1967), that a lease which conveys an improper interest is invalid.

The Court held in favor of Standard. Later, after the State learned through the recordation of an amended lease that Standard had an option to acquire part of Trace's working, the State sued to invalidate the lease, arguing that Standard had breached its fiduciary obligation. The Court held that res judicata did not bar the second suit because "[a]s shown by the later acts of the parties, [the lease at issue in the first suit] did not reflect the true contract and was never intended by them to be such. The issues now to be resolved arise out of matters whose legal effect could not have been considered or decided in the prior proceeding, and there is no basis for application of the doctrine of res judicata." 414 S.W.2d at 151.

■ Finally, respondents argue that the State ratified the lease by accepting its benefits after acquiring knowledge of the facts in the late 1960's from Knickerbocker. This argument is ratification by estoppel. A similar argument was made in *Texas Co. v. State,* 154 Tex. 494, 281 S.W.2d 83 (1955). In that case the court held:

> [I]t is well settled in this state that the state holds public school lands in trust for the benefit of all the people of the state and administers them in its sovereign capacity. The acts and conduct of its officers and agents cannot estop it from recovering those lands or the value of the minerals produced therefrom. The Relinquishment Act authorized a conveyance of a mineral estate in the land here involved only by sale or lease, not by estoppel.

*Id.* at 89.

■ Separate from the other respondents, the defendants who are the successors in interest to Hunt claim that their motion for summary judgment should stand because the State has failed to produce any evidence that Hunt was part of any conspiracy or preconceived plan. Again, this argument misperceives the role of summary judgment in our jurisprudence. While some jurisdic-

tions place a burden on the non-movant to present evidence in support of the non-movant's claim or defense, "we never shift the burden of proof to the non-movant unless and until the movant has 'establish[ed] his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law.'" *Casso v. Brand,* 776 S.W.2d 551 (Tex.1989), *quoting City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). A summary judgment may not be based on a weakness of the non-movant's pleading or proof unless it establishes the absence of a right of action or an insurmountable bar to recovery. *Swilley v. Hughes,* 488 S.W.2d 64, 66–67 (Tex.1972).

We acknowledge the difficulties respondents face defending transactions that occurred nearly sixty years ago. However, the summary judgment cannot be supported for any of the reasons advanced in the respondents' motions. We therefore reverse the judgment of the court of appeals and remand to the trial court for further proceedings.[9]

Dissenting Opinion by HECHT, J., joined by PHILLIPS, C.J., and ENOCH, J.

Dissenting Opinion by CORNYN, J.

HECHT, Justice, dissenting.

In 1934 a district court in Travis County declared that Fred Turner, Jr.'s oil and gas lease on behalf of the State of Texas was "valid and subsisting". The gist of the State's complaint in this case is that Turner violated his duty under the Relinquishment Act of 1919, *ante* at 64 n. 1, by arranging to acquire the benefit of part of the working interest in addition to his own royalty. If Turner did violate his duty, then the lease is not valid. Since the lease has been adjudicated valid, the State's claim is barred by res judicata. I therefore dissent.

9. In its prayer for relief the State asks that we remand to the court of appeals to determine the State's entitlement to summary judgment. We do not reach the merits of the State's complaints and express no opinion thereon because the State did not preserve any question for review. The State's motion for summary judgment was not included in the record, and therefore the trial court's refusal to grant the motion is not properly before us. *See Ackerman v. Vordenbaum,* 403 S.W.2d 362, 364 (Tex.1966) (appellate court may consider denial of summary judgment only if point has been properly preserved).

The material facts, all undisputed, are these. In 1930 Turner was deeded a 3.97-acre tract of land in the Yates Oil Field in Pecos County. Since the property was permanent school fund land, the State reserved ownership of the minerals. Leasing of the minerals appears to have been delayed by conflicting claims to the tract. In 1933 the State, concerned that the tract was being drained by wells on adjacent property, filed suit against Turner and others to quiet title to the tract and for appointment of a receiver to develop the minerals. The district court appointed a receiver and gave him exclusive possession and control of the tract with "complete power and authority to manage, control and develop the same." The receiver solicited bids to develop the minerals and filed a report with the court. In their pleadings Turner and Fasken asked the court to approve a lease of the minerals between them. In 1934 the district court rendered judgment vesting title to the tract in Turner subject to the State's reservation of minerals, amending and validating the Turner–Fasken lease, and discharging the receiver. The lease reserved a one-eighth royalty and called for payment of a $20,000 bonus, both of which were shared equally by the State and Turner. The lease expressly allowed the parties to assign their interests, and shortly after judgment was rendered, Turner assigned his royalty interest, and Fasken assigned a large part of the working interest, to Midland Producing Company in exchange for stock. Over the past 59 years Midland Producing Company and its successors have received more than $100 million from wells drilled on the Turner tract.

The Turner–Fasken lease is indisputably valid. The 1934 judgment establishes this, and any claim to the contrary would be barred by res judicata. The State not only acknowledges the authority of the 1934 judgment, it asserts that the Turner–Fasken lease is valid independent of the judgment and disavows any challenge to it. The State concedes not only that the lease was fair on its face and the royalty it received was all it was entitled to, but that the bonus per acre paid for the lease was the largest the State had ever obtained. The State did not seek part of the working interest and would not have accepted it because it did not want the risk of drilling a well. The State's complaint is not that it received less than it was entitled to from the transaction, but that Turner and Fasken received more. The State's claim is not for something it should have had, but for something it argues Turner and Fasken should not have had. The basis for this claim is that Turner breached his statutory duty to the State by obtaining for himself and his associates, through Midland Producing Company, the benefit of a portion of the working interest under the lease.

The State is correct in its contention that if Turner executed the lease to Fasken in order to obtain a portion of the working interest which was not to be shared with the State, then Turner exceeded his authority as the State's agent under the Relinquishment Act. We faced a similar contention in *State v. Standard*, 414 S.W.2d 148 (Tex.1967), which involved a lease reserving to the surface owner an option to acquire a portion of the working interest. We held that the surface owner exceeded his authority because "the leasing power of the surface owner [under the Relinquishment Act] is limited to the execution of an oil and gas lease for bonus, rental and royalty considerations not less than the statutory minimum and consistent with prevailing values." *Id.* at 153. We also held, however, that because the surface owner had exceeded his authority, the lease was invalid. In other words, when a surface owner arranges a lease to acquire a portion of the working interest not shared with the State, the lease is invalid. It therefore follows that a claim that a surface owner exceeded his authority is inconsistent with an adjudication that the lease is valid. If the surface owner exceeded his authority, the lease is invalid; if the lease is valid, the surface owner did not exceed his authority.

The rule in *Standard* bars the State's action in this case. Although the State repeatedly affirms the validity of the Turner–Fasken lease, as a principal it is nevertheless permitted to complain of its agent's conduct. The 1934 judgment, however, is res judicata of its complaints. If Turner had arranged to acquire some benefit from the working interest before the 1934 judgment was signed,

then the lease would have been invalid. The judgment that the lease was "valid and subsisting" necessarily precludes the State's subsequent claim that Turner exceeded his authority. After judgment was rendered and the lease validated, *Standard* indicates that Turner's duty to the State ended, so that if he then arranged to acquire a benefit from the working interest he violated no duty to the State. The State's somewhat implausible argument that Turner was under a perpetual duty never to obtain any benefit from the working interest conflicts with *Standard.*

The validity of the Turner–Fasken lease, adjudicated in 1934 and reaffirmed by the State in this case, completely precludes the State's assertion that Turner exceeded his authority or breached his duty under the Relinquishment Act. Even if the State argued that Turner acted fraudulently, which it has not chosen to do in this Court, any action against Turner for his pre-judgment conduct is barred by res judicata, and after judgment was rendered Turner was no longer the State's agent. This flaw in the State's case is both irrefutable and fatal. It involves no genuine issues of material fact. The trial court was right in granting summary judgment against the State, and the court of appeals was right in affirming it. The Court's sole response is that the State has raised sufficient fact issues regarding Turner's actions to entitle it to a trial. Besides being unnecessary, a trial in this case is an especially heavy burden for all parties because of the passage of time, the death of most of the witnesses, and the impossibility of reconstructing events more than half a century old. This burden is occasioned simply by the Court's refusal to meet the arguments raised.

The parties have raised many other issues. Defendants claim, among other things, that the duty Turner owed the State was not that of a fiduciary, that the appointment of a receiver in 1934 deprived him of any authority except to propose a lease for the trial court's consideration, that there is no evidence that Turner breached whatever duty he had, and that there is no evidence that Turner's successors acted in concert with him. Defendants also claim that the State ratified the Turner–Fasken lease transaction when the Attorney General's office investigated it in the late 1960's and found no actionable wrongdoing involved. In my view, it is not necessary to determine whether any of these arguments have merit.

Since I would affirm the judgment of the court of appeals, I dissent.

PHILLIPS, C.J., and ENOCH, J., join in this dissenting opinion.

CORNYN, Justice, dissenting.

I dissent. Because Turner's status as the State's leasing agent was terminated under the Relinquishment Act (Act), the judgment of the court of appeals was correct and should be affirmed. Further, I agree with JUSTICE HECHT's conclusion that the State's claims are barred by res judicata; the judgment of the court of appeals should be affirmed on that basis as well.

The State initiated the *Reid* litigation in November 1933, primarily seeking appointment of a receiver to solicit bids for an oil and gas lease on the subject tract. A receiver was needed because Turner's status as the State's leasing agent[1] was terminated by operation of law by his failure to timely drill an offset well on the property. Act of July 31, 1919, 36th Leg., 2d C.S., ch. 81, § 3–5, 1919 Tex.Gen.Laws 250. In response to the State's request, the district court appointed a receiver, granted him exclusive possession and control of the tract, and ordered him to solicit bids for a lease or drilling contract.

During the course of those legal proceedings, Turner and Fasken submitted a proposed lease under the terms of which Fasken would obtain an oil and gas lease on the property in exchange for a $20,000 bonus and

1. In *Norman v. Giles,* this court first characterized the nature of the surface owner's agency relationship to the State by referring to the owner as the State's "leasing" agent. 148 Tex. 21, 219 S.W.2d 678, 684 (1949). As the court of appeals observed, this characterization has been carried forward ever since. *See Shell v. Rudder,* 156 Tex. 618, 299 S.W.2d 686, 689 (1957) (referring to the surface owner's "leasing rights"); *State v. Standard,* 414 S.W.2d 148, 153 (Tex. 1967) (referring to surface owner as "statutory leasing agent for the state").

a ⅛ royalty to be shared equally by the State and Turner. After reforming the lease to make its terms even more advantageous to the State, the district court approved the Turner–Fasken lease, and rendered judgment incorporating the lease terms.

The lease specifically permitted any party to assign his interest, and following a series of assignments and other transactions, Turner eventually acquired part of what became the extremely profitable working interest in the mineral estate. Although Turner's dealings came to the Attorney General's attention in the 1960s, the State took no legal action until it filed suit in 1988 seeking approximately $162 million in damages.

The essence of the State's claims is that the Turner–Fasken lease, although its terms were essentially dictated and approved by the district court in *State v. Reid*, was the product of a sham transaction and a breach of Turner's fiduciary duty as the State's leasing agent under the Act. The court of appeals affirmed summary judgment in favor of Turner's successors in interest, holding that Turner's status as the State's leasing agent did not carry with it a general fiduciary duty to the State, and that even if it did, his agency status and any duty flowing from that status were terminated under the terms of the Act. I agree with the court of appeals' resolution of this issue.

Turner's agency was terminated as a matter of law under the Act by his failure to offset drainage from the tract. The Act provides that a surface owner's agency status is terminated if a well is not drilled within 100 days of the discovery of oil within 1,000 feet of the tract. Act of July 31, 1919, 36th Leg., 2d C.S., ch. 81, § 3–5, 1919 Tex.Gen.Laws 250. We have held that under such circumstances the agency of the surface owner is automatically terminated, and any subsequent lease executed by the surface owner purporting to be in the capacity as the State's leasing agent is "without effect." *Norman v. Giles*, 148 Tex. 21, 219 S.W.2d 678, 684 (1949). Indeed, it was Turner's failure to offset drainage that precipitated the *Reid* litigation and resulted in the appointment of a receiver. Once Turner's agency was terminated, no legal impediment prevented him from acquiring an interest in excess of that afforded by the Act to the surface owner. And as soon as the agency was terminated and suit was filed, all power to convey rights to the oil and gas interests resided with the district court. The fact that Turner executed the lease under the court's authority and with its approval cannot support the conclusion that Turner's agency as a surface owner under the Act was somehow resurrected. Moreover, even if some question remained about Turner's continued authority as the State's leasing agent, the court's appointment of a receiver superseded any authority that Turner might have retained to act on behalf of the State. *See Kirby v. Dilworth & Marshall*, 260 S.W. 152, 153 (Tex.Comm'n App.1924, judgm't adopted); *Alworth v. Morris*, 19 S.W.2d 212, 214 (Tex.Civ.App.–Eastland 1929, no writ).

The recital in the *Reid* judgment that the Turner–Fasken lease was executed by Turner "individually and as agent of the State," has no legal significance in this context. The district court, through the receiver, assumed complete authority to decide to whom a lease would be granted and under what terms. The *Reid* judgment did not recognize that Turner's *agency status* was valid and subsisting, but that Fasken's *lease* was valid and subsisting.[2] Nor is the absence of other

2. The judgment provides in part:

All parties having agreed in open Court to waive a jury and to submit the matters of facts as well as of law to the Court, thereupon the Court heard the pleadings, the evidence and the argument of counsel, and being fully advised in the premises, does render the following judgment, to-wit:

IT IS ORDERED, ADJUDGED AND DECREED that the title to the following described tract of land, situated in Pecos County, Texas, to-wit:

All that certain tract and parcel of land situated in Pecos County, Texas, about 57 miles East from the town of Fort Stockton and being a part of the Bob Reid Survey and described as follows: [legal description of the tract] is vested as follows;

1. The fee simple title is vested as against all parties hereto in Fred Turner, Jr., subject to the reservation of minerals in and under the same as set forth in the Patent from the State of Texas to Bob Reid....

affirmative language in the judgment concerning Turner's legal relationship to the State determinative; the automatic termination of Turner's agency status was one of the reasons the State sought to protect its interests by filing the *Reid* litigation in the first place.

I would affirm the judgment of the court of appeals.

---

2. The intervenor, A. Fasken, has a valid and subsisting oil and gas lease executed by Fred Turner, Jr., individually and as agent of the State of Texas, as lessor, to the said A. Fasken, as lessee, dated March 26, 1934, and being substantially as follows, to-wit. . . .
The judgment then sets out all the terms of the Turner–Fasken lease.