CLARK 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00349-CV







Bruce A. Clark, Appellant



v.



Railroad Commission of Texas and Raymond Franke, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 94-02724, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING








 Following a contested case proceeding, appellee Railroad Commission of Texas
("the Commission") found that appellant Bruce A. Clark had violated several Commission
rules while operating three oil and gas leases. The Commission ordered Clark to pay a fine
and remedy the violations. Clark now appeals the district-court judgment affirming the
Commission's order. We will affirm the district-court judgment.



BACKGROUND

 Clark operates three oil and gas leases located in Callahan County. (1) In 1976, the
lessor filed a complaint with the Commission concerning Clark's operation of the leases. As a
result, three dockets concerning inactive wells on the leases were brought against Clark, but the
Commission took no further action at the time. On June 5, 1992, the Commission began the
current action against Clark. A hearing concerning all three dockets was held on September 29,
1992 and continued on October 15, 1992. Clark appeared pro se at both hearings.

 On December 20, 1993, the Commission issued a final order finding Clark in
violation of three Commission rules. See 16 Tex. Admin. Code §§ 3.8, 3.13, and 3.14 (West
1995) (hereinafter Rules 8, 13, and 14). The Commission ordered Clark to plug abandoned wells
on one of the leases, backfill unpermitted pits, fully document well locations, and pay an
administrative penalty for past violations. After the Commission overruled Clark's motion for
rehearing, Clark petitioned the district court for judicial review of the order. The district court
overruled Clark's points of error and affirmed the Commission's order. Clark now appeals the
district-court judgment by five points of error.



DISCUSSION AND HOLDINGS

 In his five points of error, Clark argues that the Commission's findings are not
reasonably supported by substantial evidence in the record. We review such a challenge under
the substantial-evidence rule contained in the Administrative Procedure Act. Tex. Gov't Code
Ann. § 2001.174 (West 1996). Well-settled standards govern our review of a substantial-evidence
challenge to agency action in a contested case:



1. The findings, inferences, conclusions, and decisions of an agency are
presumed to be supported by substantial evidence, and the burden is on the
party contesting the order to prove otherwise.


2. In applying the substantial evidence test, the reviewing court is prohibited
from substituting its judgment for that of the agency as to the weight of the
evidence of questions committed to agency discretion.


3. Substantial evidence is more than a scintilla, but the evidence in the record
may preponderate against the decision of the agency and nonetheless amount
to substantial evidence.


4. The true test is not whether the agency reached the correct conclusion, but
whether some reasonable basis exists in the record for the action taken by the
agency.


5. The agency's action will be sustained if the evidence is such that reasonable
minds could have reached the conclusion that the agency must have reached
in order to justify its action.



Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 452-53 (Tex.
1984); City of League City v. Texas Water Comm'n, 777 S.W.2d 802, 805 (Tex. App.--Austin
1989, no writ).

 In his first point of error, Clark challenges the Commission's finding that he
maintained four unpermitted pits on the W.M. Franke "B" Lease in violation of Rule 8(d)(2). See
16 Tex. Admin. Code § 3.8(d)(2) (West 1995). Rule 8(d)(2) prohibits the unpermitted use of a
pit for the storage of petroleum products or wastes. Id. Clark contends that the pits located on
the W.M. Franke "B" Lease were lawful pursuant to Rule 8(d)(7)(C) because they predated Rule
8(d)(2). Rule 8(d)(7)(C) allows for continued use of a preexisting, unpermitted pit provided that
the operator makes a timely and sufficient application to the Commission for a permit. Id. §
3.8(d)(7)(C).

 During the hearings, Commission staff introduced inspection reports demonstrating
Clark's ongoing violations of Rule 8(d). The reports show that Clark maintained four unpermitted
pits on the W.M. Franke "B" Lease until at least December 1990; in 1991 Clark backfilled one
pit but the other three remained in place. Clark introduced permit applications that he had
prepared for three of the four pits. Clark alleged that these applications for the three pits had been
timely filed, but the applications themselves bear no indication that they were received or filed
by the agency. On the contrary, the record contains letters from Commission staff to Clark
rejecting his applications due to insufficient information. 

 We hold that the record contains substantial evidence supporting the Commission's
finding that Clark violated Rule 8(d)(2). The record reflects that Clark filed inadequate permit
applications for three of the four pits. The filing of an inadequate permit application does not
excuse the operator from continued noncompliance with Rule 8(d)(2). Id. We overrule Clark's
first point of error.

 In his second point of error, Clark challenges the Commission's finding that he
caused or allowed pollution (2) of surface or subsurface water on the leases he operates. See id. §
3.8(b). Clark contends that the only Rule 8(b) issue is contamination of fresh water by salt water
runoff. Clark argues that a report of the U.S. Soil Conservation Service, introduced by
Commission staff during the hearing, establishes conclusively that the fresh water on the lease was
not saline. Clark therefore argues that he did not violate Rule 8(b).

 We find substantial evidence in the record supporting the Commission's finding of
fresh-water pollution on Clark's leases. Despite Clark's attempt to limit the pollution issue to salt
water, the Commission produced reports and photos indicating surface water contamination from
the discharge of oil and gas wastes. Commission staff introduced an inspector's report dated June
1, 1992, that noted both oil and salt water leaks polluting an area of four hundred square feet. 
The U.S. Soil Conservation Service report documented severe damage to a wheat field resulting
from an extremely high concentration of salt in a soil layer; the inspector concluded that rain
runoff had forced saline water to the surface of the lease. Because this record evidence amply
supports the Commission's finding of fresh-water pollution, we overrule Clark's second point of
error.

 In his third and fourth points of error, Clark challenges the Commission's finding
that he violated Rule 14(b)(2) by failing to plug the wells on the W.M. Franke "B" Lease within
one year after he stopped producing oil from them. See id. § 3.14(b)(2). Clark first argues that
the Commission has no definition, standard, or guideline for the meaning of "production" and
therefore cannot make a meaningful finding of non-production. We reject the argument. Rule
14(b)(2) applies to a "dry or inactive well . . . ." Id. The plain language of the rule indicates that
it applies to wells from which the operator has not extracted or is no longer extracting petroleum
products in any quantity. See Monsanto Co. v. Tyrrell, 537 S.W.2d 135, 137 (Tex. Civ.
App--Houston [14th Dist.] 1976, writ ref'd n.r.e.) ("production" defined as "actual physical
extraction of the mineral from the soil"). During the hearing, Commission staff entered in
evidence a certified copy of a Commission oil production ledger showing no production reported
for the W.M. Franke "B" Lease between June 1991 and May 1992. Additionally, the director of
the Commission's oil field clean-up section testified that he personally examined the wells during
the time in question and found them to be apparently abandoned and not producing in any
quantity. Clark does not dispute that he failed to produce the lease. Because we find that Rule
12(b)(4) contains a clear test for production, we overrule Clark's third point of error.

 In his fourth point of error, Clark argues that the Commission cannot penalize him
for failing to produce the W.M. Franke "B" Lease wells because the Commission issued a
severance order prohibiting him from producing the lease wells during the relevant time period. 
We disagree. A party's failure to produce is not excused by a Commission severance order when
compliance with the violated regulations is within reasonable control of that party. See Atkinson
Gas Co. v. Albrecht, 878 S.W.2d 236, 241 (Tex. App.--Corpus Christi 1994, writ denied); Hydro-Carbon Management, Inc. v. Tracker Exploration, Inc., 861 S.W.2d 427, 435-36 (Tex.
App.--Amarillo 1993, no writ). The Commission issued Clark's severance order after he had
repeatedly violated Rule 8 as discussed above, i.e., having unpermitted pits and causing water
pollution. As operator, Clark had the ability to file sufficient applications for pit permits and
operate the lease in compliance with water-pollution regulations. Clark presented no evidence that
compliance with Commission rules was beyond his control. Therefore, the severance order did
not relieve Clark of his duty to plug after one year of nonproduction. Additionally, Clark could
have complied both with the severance order and Rule 14(b)(2) by either plugging the wells or
obtaining an extension of the time allowed to plug. He did neither. We overrule Clark's fourth
point of error.

 In his fifth point of error, Clark challenges the Commission's finding that he
operated or maintained wells without adequate wellhead assembly for surface control. See 16
Tex. Admin. Code § 3.13 (West 1995). Clark contends he did not violate Rule 13 for two
reasons. First, Clark argues that the Commission is barred from issuing sanctions against him
under the doctrine of laches because he has used this same type of wellhead assembly for twelve
years without penalty. This argument is without merit. The State is not subject to the defense
of laches. State v. Durham, 860 S.W.2d 63, 67 (Tex. 1993). Second, Clark argues that there
is no standard for wellhead assembly compliance, making the rule void. We disagree. Rule
13(b)(1)(B) provides: "Wellhead assemblies shall be used on wells to maintain surface control
of the well." Id. § 3.13(b)(1)(B) (West 1995). Rule 13 also explicitly provides that its intent is
to require wellhead assemblies that prevent spillage and pollution from well production and that,
in the absence of specific requirements in the rules, the operator "shall make every effort to follow
the intent of the section, using good engineering practices and the best currently available
technology." Id. § 3.13(a)(1). We hold that Rule 13 provides a sufficiently definite standard for
wellhead assembly requirements. A reasonable operator would understand that the rule requires
the use of the best available technology to prevent pollution and spills by controlling the surface
of the well.

 During the hearing, Commission staff entered in evidence numerous reports and
photographs indicating surface control problems with Clark's wells, including multiple wells open
to the air and surrounded by pollution. Additionally, Commission staff produced evidence
concerning one well that, lacking wellhead control, had filled up with water and then spilled oil
on the ground. We hold that the record contains substantial evidence to support the Commission's
finding that Clark violated Rule 13. Therefore, we overrule Clark's fifth point of error.


CONCLUSION

 We find substantial evidence to support each challenged provision of the
Commission's order. Therefore, we affirm the district court's judgment.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: February 7, 1996

Do Not Publish

1.   The three leases are the W.M. Franke Lease, the W.M. Franke "A" Lease, and the
W.M. Franke "B" Lease.
2.   Rule 8(a)(28) defines pollution in this context as:


The alteration of the physical, thermal, chemical, or biological quality of, or
the contamination of, any surface or subsurface water in the state that
renders the water harmful, detrimental, or injurious to humans, animal life,
vegetation, or property, or to public health, safety, or welfare, or impairs the
usefulness or the public enjoyment of the water for any lawful or reasonable
purpose.


16 Tex. Admin. Code § 3.8(a)(28) (West 1995).